(49 South. 195.)

No. 17,435.

CUSIMANO v. CITY OF NEW ORLEANS.

(April 12, 1909.)

1. ACCIDENT.

In a suit sounding in damages for personal injury, the question of fact is whether plaintiff's daughter hastily jumped or stepped on the bridge while it was in motion.

2. NEGLIGENCE (§ 85*)—CONTRIBUTORY NEGLIGENCE—CHILDREN.

If she ran to or hastily stepped on the bridge while it was in motion, the plaintiff is not entitled to judgment.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 121–129; Dec. Dig. § 85.*]

3. BRIDGES (§ 37*)—NEGLIGENT OPERATION—LIABILITY OF PUBLIC AUTHORITIES.

If she went on the bridge while it was in place, and then, due to a sudden, unexpected, and negligent putting it in motion, she lost her balance and was crushed, there is liability.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. §§ 103–105; Dec. Dig. § 37.*]

4. BRIDGES (§ 43*)—LIABILITY FOR INJURIES—PROXIMATE CAUSE.

The proximate cause of the accident from the first point of view considered as sustained by the testimony was the heedless act of the little girl.

[Ed. Note.—For other cases, see Bridges, Dec. Dig. § 43.*]

5. CONDITION OF BRIDGE.

The bridge was in a fairly good condition.

6. BRIDGES (§ 44*)—INJURIES—CONTRIBUTORY NEGLIGENCE.

There was no guard or chain to warn pedestrians. That did not have the effect of relieving the daughter of plaintiff from the necessity of acting as is expected of a young person of her age.

[Ed. Note.—For other cases, see Bridges, Dec. Dig. § 44.*]

7. NEGLIGENCE (§ 85*)—CONTRIBUTORY NEGLIGENCE—CHILDREN.

Contributory negligence may be laid at the door of a young person 10 years and 9 months of age.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 121–129; Dec. Dig. § 85.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred. Durieve King, Judge.

Action by Angelo Cusimano against the City of New Orleans. Judgment for plaintiff, and defendant appeals. Reversed, and action dismissed.

Henry Garland Dupré, Asst. City Atty., and John Fowle Crosby Waldo, Asst. City Atty., for appellant. Walter Louis Gleason and James O'Connor, for appellee.

BREAUX, C. J. Alleged personal injury which resulted in the death of plaintiff's little daughter is the ground for plaintiff's suit for $10,000 damages.

Plaintiff substantially avers that his daughter, while returning from church, on her way home on the 21st of April, 1906, late in the afternoon, where she had gone to attend her class in catechism, met with an accident in which she was mangled and lost her life. The testimony shows that she was to make her first communion the next day.

She was at the time on the Dumaine street bridge, which crosses the Bayou St. John at Dumaine street.

Plaintiff charged that the killing of his daughter was the result of the negligence and carelessness of the city, which had not provided an apparatus such as is required to turn the bridge in safety; that the bridge keeper did not have a clear and unobstructed view of the bridge from where he stood, while operating the bridge; that the apparatus used was unsafe.

The bridge is one of the largest and heaviest in the city. In the middle of this bridge there are double tracks for the incoming and outgoing street cars in either direction. On either side of the bridge there are walkways for pedestrians. There are railings for the walkways on each side of the bridge, thereby separating these walkways for pedestrians from the center of the bridge used by the street cars in going and coming over the double tracks laid on the bridge. At the end of the bridge opposite the railing on each side, there is a brick pillar or wall.

The bridge when closed comes very near up to these walls. The front of the bridge slightly curves toward each side from the center.

Each footwalk measures about five feet and a half in width.

The petition of plaintiff does not set out that there was no guard or chain at the end of the bridge to prevent pedestrians from attempting to cross while the bridge was turning.

There was, however, testimony heard upon that subject, over defendant's objection. To this testimony we will have occasion to refer later.

There was a judgment rendered in the district court against the city in favor of plaintiff in the sum of $5,000.

The city appeals.

The first witness was a young girl aged about 12 years. She was the first witness examined on behalf of the defendant, as she was to leave the state permanently the next day after she gave her testimony.

Although she was a witness for defendant, we take up for review the testimony in the order in which it was heard. She was present at the time.

There was a schooner in the Bayou St. John on the lake side of the bayou from the bridge on its way to the city. It gave the usual signal to open the bridge that it might pass. The two employés on the bridge began to make preparations to turn the bridge. The assistant keeper "unjacked the bridge," to use his expression, and afterward went toward the end to move the braces. This done, he notified the bridge keeper that all was in readiness to apply the electric apparatus.

This little girl states that plaintiff's daughter was sitting on the steps of her home, which was just across the street from the end of the bridge; that the little girl ran as the bridge was turning, and jumped on the aisle when it was about one foot from the brick pillar, to which we have before referred; that she was caught between the inner railing and this brick pillar and crushed.

She persistently testified that the bridge had begun to turn when the little girl killed got to the bridge and jumped into the aisle. She is not entirely consistent when pressed as a witness on cross-examination, but she adhered to the statement that the little girl ran and jumped on the bridge after the bridge began to turn.

We will quote her testimony:

"Q. Now, just state how it happened.
"A. Well, I was standing there and the bridge started to turn, and when it started she was sitting on the step and ran and jumped on the aisle. There was a side aisle in the bridge, and it had gone a little distance; only had a foot more to go, and she jumped on it between the brick pillar. She jumped in between that aisle and the outside brick pillar and she got crushed there.
"Q. You say she was crushed between?
"A. Between the brick pillar and kind of railing of the bridge.
"Q. The brick pillar that was on the embankment?
"A. Yes, sir."

The next witness was examined on behalf of plaintiff. He was going to work at the Southern Park on the afternoon of the accident. He was standing 20 feet from the place where the little girl was killed. He was facing the bridge and saw her on the bridge. He testified that the bridge was turn-

ing as she got on it. "That the little girl jumped on the bridge while it was turning." He reiterates that the bridge was moving. It was just starting. He did not see her when she was crushed and fell from the bridge into the water.

Shown a photograph of the place, he pointed to the bridge and the revetment bank or brick pillar, and said that it was there that she was crushed. He stated that there was no guard or chain at the end of the bridge. He further stated that there was a colored man on the bridge (this was the assistant bridge keeper) whose back was turned toward the street; that he faced an opposite direction, and that the bridge keeper who operated the bridge was in the little house on the side of the bridge. He said further that his attention was attracted by the schooner that was about to pass, and for that reason he did not see the little girl when she was crushed. He was at the time waiting for the bridge to make the usual turn. It was too far open for him to make the crossing when he got to the bridge.

Another of plaintiff's witnesses was driving a wagon on his way to his home. He stopped at the bridge as it was about to be opened. He saw the little girl on the bridge just as it was about to be opened. She lost her balance and fell in between the railing and the brick foundation. He said that the inner railing swung near to the brick pillar on opening the bridge. That the space between the bridge and the pillar was too small to allow anybody to go in between them.

"Q. You say the bridge was opening when she attempted to step on?
"A. Yes, sir, and she lost her balance and was crushed between pillar No. 4 and railing No. 1 of the photograph."

He had stopped his wagon before the little girl came in sight in order to wait that the bridge could be turned.

Again, on cross-examination, he said she stepped on just about the time the bridge was moving.

He further states that the inner rail of the walkway had moved a distance of about five feet when she was crushed.

Fred Smith, another witness for the defendant, states in answer to a question:

"A. Yes, sir, and she lost her balance and was crushed in between No. 1 and No. 4 of the photograph; that is, between the inner railing on the lake side of the bridge and the brick pillar."

Question to which the foregoing was an answer:

"Q. You say that the bridge was opening when she attempted to step on?"

The unavoidable inference from the testimony is that she stepped on the bridge after it had begun to turn.

In addition, the witness stated at another time that he stopped "before she came in sight as they were in the act of opening the bridge." To be exact in regard to this testimony, we quote: "I had stopped for them to open it."

It is true that on cross-examination the witness modified this statement, not to the extent, however, of affirming that the bridge was not in motion.

The testimony of the colored assistant is not specially important, as he did not see any one, and only, as usual, made the preliminary preparations before beginning to turn the bridge.

We pass his testimony without further comment.

Another witness was the bridge keeper. He did not see the accident. He gave a description of the operation in opening the bridge.

He said that there is a long lever about 15 feet in length handled by him and his assistant to loosen the rails from the foundation before it is possible to move the bridge. That there is a key three inches in diameter which unlocks the bridge at the center. That

after the bridge is unlocked it is moved by electricity.

He did not see the little girl at all. He cannot see very well from the little house. He stated further that when the bridge starts it moves rapidly.

The superintendent of the New Basin Canal was called as a witness for plaintiff, and testified regarding the necessity of having a guard or chain on a bridge moved by electricity. He mentioned three bridges moved by electricity at which there were chains at the end. .

The commissioner of public works also testified, and said that whenever the bridge keepers called for chains they were furnished.

We have reviewed the testimony as carefully and as attentively as we could.

If the little girl jumped on the bridge, or even if she walked to and stepped on the bridge after it was in motion, it was not prudent even for a young girl of 10 years and 9 months.

If, on the other hand, she got on the bridge while it was standing, she was not in the least at fault, and the case would have to be viewed in another light.

As to whether she got on the bridge after it was moving or not, was a very much disputed question in the brief and at bar.

Plaintiff's counsel's contention is that the bridge was not moving at all, and the contention of counsel for defendant, on the contrary, is that the bridge was turning at the time, and that she jumped on, and immediately thereafter was caught by the railing and the pillar as mentioned by the witnesses.

We infer from the testimony that she must have stepped on the pedestrian walk after the bridge began to move. No testimony with any degree of certainty leads to the inference that she stepped on this walk before it began to turn.

As relates to the guard or chain, as properly decided by our learned Brother of the district court, one or the other should have been provided to prevent pedestrians from coming on the bridge, particularly as it is turned by a power as positive as electricity.

But this does not relieve a pedestrian, even if she be a child 10 years and some months of age, from the necessity of exercising some degree of care and prudence. As negligent as the city may have been in not providing proper guard or chain, she cannot be held liable if the want of the chain or other hindrance was not the proximate cause of the casualty.

As relates to the responsibility of children for their acts, the leading case in our court on the subject is Westerfield v. Levis Bros., 43 La. Ann. 63, 9 South. 52.

This case has some features similar to the case before us.

The defendant's servants had been negligent in not locking an iron roller. The boy killed was less than six years old. As a question of law, the court held that he was non sui juris. The subject was very much discussed at the time, and the case was decided by a divided court.

It has never been held that a young girl over 10 years old is not responsible in matter of an accident happening to her on account of her own imprudence.

Recently, in Downey v. Baton Rouge Electric Co., 122 La. 481, 47 South. 837, a boy of nine years of age had imprudently exposed himself and thereby lost his life. The court held that his negligence was the proximate cause, and that in consequence plaintiff had no right to a judgment.

In Lynch v. Knoop, 118 La. 618, 43 South. 252, 8 L. R. A. (N. S.) 480, 118 Am. St. Rep. 391, the child was eight years old. She, also, was careless and imprudent. It was decided that her parents could not recover judgment.

To the same effect is the Cronan Case, 49 La. Ann. 65, 21 South. 163. The boy in that case was 10 years of age.

This being our jurisprudence, it is not pos-

sible consistently and properly to make a change on this point. It is binding upon the court.

The decision in Gavin v. Chicago, 97 Ill. 66, 37 Am. Rep. 99, has similar features. The bridge in that case had just been swung around to allow a vessel to pass. As it turned and was being closed, the boy on the turning bridge was badly hurt in falling.

The point was urged on the part of plaintiff that the defendant should carefully maintain and manage the bridge to protect pedestrians. "The evidence is," said the court, "plaintiff jumped upon the bridge while it was in motion, and in that way sustained the injury of which he complains."

And the court said further that it flows or follows from an act of volition, and cannot be said to happen necessarily and unavoidably.

The complaint is that there was no barrier of any kind at the approach of the bridge, and no watchman to guard against accident.

The court said that it was the duty of the municipality to maintain and keep bridges in good and safe condition, but that when this has been done it has discharged its duty to the public in that respect. That persons having occasion to pass on such bridges must exercise reasonable care for their own personal safety.

All persons sui juris must be held to exercise some care, and even young persons must not be dangerously imprudent. No duty rests upon the city to make such bridges safe for children to play on.

It is true that children should not be held to the same care and prudence as adults are to be held. That would be expecting too much of young human nature. But they cannot be absolved from all responsibility. If they fail to exercise a prudence reasonable to be expected from persons of their age, others cannot be made responsible for them.

The testimony has been carefully read; also pertinent decisions upon the subject.

We have sought to arrive at another conclusion. We do not find it possible.

One of the complaints is that the young girl had not been seen by the bridge keeper or his assistant; that the view on the bridge was obstructed.

The workmen were busy in operating the bridge. They could not see in every direction.

This did not relieve her from the necessity of exercising some care and caution for her own safety.

Although not of the least importance we will state that her father must have been mistaken. She was not returning from church. The bridge is not on the way to the church. She evidently was seeking to go on the bridge to see the passing boat.

This is a hard case. It gives rise to gloomy thoughts, but they cannot be controlling, in face of the facts and the law applying.

We will say, in conclusion, she must have gotten on the bridge hastily, lost her equilibrium, and fell and was crushed.

The facts and the circumstances preclude the possibility of arriving at another conclusion other than the following.

For reasons stated, the law and the evidence being in favor of defendant and against plaintiff, the judgment appealed from is avoided, annulled, and reversed. It is ordered, adjudged, and decreed that defendant have judgment rejecting plaintiff's demand, and that plaintiff's suit be dismissed in both courts, at his costs.