## No. 9590.
### Orleans Appeal.

---

## MR. AND MRS. EDWARD PILSBURY v. J. D. O'KEEFE, RECEIVER, ET AL.

---

(January 19, 1925, Opinion and Decree.)

*(Syllabus by the Court.)*

1. Louisiana Digest—Street and Interurban Railroads—Par. 21, 26, 30.
While liability for certain injuries suffered by plaintiff in a street car accident may be avoided by defendant's plea and successful proof that plaintiff's gross negligence caused the initial accident, nevertheless plaintiff may recover for damages arising out of the accident, where it is definitely shown that ordinary and reasonable care on the part of the defendant would have prevented additional injuries suffered by plaintiff.

(Civil Code, Art. 2315. Editor's note.)

Appeal from the Civil District Court for the Parish of Orleans, Division "B", Hon. Mark M. Boatner, Judge.

This is a damage suit for personal injuries to a child.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Woodville & Woodville, attorneys for plaintiff and appellee.

Benj. W. Kernan, attorney for defendant and appellant.

BELL, J. Plaintiffs, on behalf of their daughter, a minor, bring this action in damages against the street railways company of New Orleans and its bondsman, for injuries sustained by the child in an accident which occurred on the upper, tracked portion, of what is known as the neutral ground of Canal Street, between Rampart Street and University Place. The claim is for $30,000.00, the full amount of which, judgment is prayed for against the defendant railway company, and a judgment for at least $5,000.00 of this amount is asked, *in solido* against both defendants.

The usual charges and counter charges of negligence common to damage suits constitute the major portion of the pleadings in this case. We are in accord with the findings of the trial judge, to the effect that the child—eleven years old at the time of the accident—was guilty of contributory negligence leading up to and causing the initial accident from which she sustained some of her injuries. There was judgment *in solido* against both defendants in the sum of $3,000.00, from which judgment each defendant has appealed.

The accident happened at the place noted on the afternoon of February 11, 1921, at about 3:30 o'clock. A careful examination of the voluminous record before us, in which the testimony of some twenty-one witnesses has been recorded, leads us to the additional conviction that the initial accident by which the child suffered injuries to the lower portion of her left leg, could not have been avoided by the defendant railway company. The child's negligence in failing to look, or to listen with any degree of care, which even one of her age should have exercised, and the suddenness with which she appeared on the company's track from a place where she could not have been seen for any length of time prior to the accident, constitute facts which further lead us to the conclusion that the initial accident was itself unavoidable, in so far as the defendant railway company is concerned. The company's operation of the car as well as its equipments on the car do not appear, under the circumstances of this case, to establish any grounds for a conclusion that this defendant was, as to the initial accident, at fault.

The little girl is shown to have been a passenger with her mother and brother on a Canal Street belt car, which stopped at the place of the accident, immediately behind another car, which had come to a stop in obedience to traffic signals. There was a space of some four or five feet between these two cars, and both of these cars were at rest when the child, atempting to go to the upper side of Canal Street, passed between the cars and approached near enough to, or over the track of an oncoming St. Charles Street belt car, whose fender hanging down in front of the car and suspended about six to eight inches above and parallel to the track, struck her down. There is much contradictory evidence as to whether the motorman of the oncoming car rang his gong or gave any notice of approaching danger. The motorman of this car swears that he rang his gong, reversed his brakes and made every effort, except that of springing the fender, to avoid the accident. The fact is definitely established that the fender was not dropped or sprung so as to be of service for which it was intended. We give little weight to this fact or to the fact of whether the gong was rung or not, for the reason, as already stated, that we are convinced from the evidence before us that any exercise of due caution and care on the part of the motorman would not have avoided the accident. We, therefore, pass to the consideration of what happened immediately after the child was struck.

We find that the lower portion of the child's left leg above the ankle was pinned under the left front wheel of the car, with resulting damages, both painful and severe.

While thus pinned under the car, it appears that effort was made by innumerable bystanders, but by none of the eight employees of the company who were present while the child was in this position, to raise or jack up the car. The motorman, after descending from his car momentarily, again mounted the car, and attempted, on the advice of many persons around him, but against the particular instructions and cautions given him by his conductors, to back the car. There is no doubt that the car was backed while the child's leg was under the front wheel. At this moment the child screamed from intense pain, and we find from the evidence, as did the trial judge, that the moving of the car backwards resulted in serious and painful injury to the thigh of the child's leg just above the knee. She was taken to the hospital, where she remained from February 11, 1923, to March 31, 1923, and was for many weeks afterwards under treatment of Dr. J. A. Danna, whose testimony, as well as his certificate in regard to the accident, convinces us that the injury to the thigh occurred, not at the same moment when the foreleg was injured, but only after the car was moved backwards. We must conclude that no part of the car could have struck or injured the child except the wheel, which pinned the foreleg in the first part of the accident, but that in the backing of the car some part of the framework surrounding the wheel was lowered upon the child's thigh. The doctor says in his certificate, compiled by agreement after his verbal testimony had been given, that the little girl had severe crushing injury of the left thigh, such as might have been produced by continued strong pressure, the thigh being still dented across its whole diameter at a point just below its middle; that the bone was not broken completely across, but the x-ray showed a fracture through the inner condyle just above the knee, and that the leg below the knee, down to the foot, was severely crushed and torn. He further states that while the injury to the leg below the knee appeared more extensive, being an open, gaping wound, yet the injury to the thigh above was much more serious, causing him for a while to fear the necessity for amputation of the thigh, probably resulting in death. He further states that skin taken from the upper part of the thigh had to be grafted to the wound on the lower part of the leg. It is his opinion that there must be some permanent impairment of the limb as a result of the severe crushing of the thigh and loss of substance in the leg. It further appears from his testimony and certificate that treatment continued for many weeks after the child was dismissed from the hospital. The photographs of the child's limb show permanent and severe scars and lacerations. The child's testimony is to the effect that she still suffers from pain in her leg, and the trial judge has found upon examination made at the trial, that the child was still limping. She states that she is able to dance, though cannot engage in some athletic sports. Beyond the severe scars on the leg, we conclude, however, from other testimony in the record, that the injuries are not of a nature to permanently cripple her.

From the evidence of several witnesses testifying in this case, and from the physical fact that the skin on the upper portion of the leg above the knee was not lacerated but crushed by some apparent weight, it is fair to conclude that all of the injury to the thigh was a result of the backing of the car after the initial accident.

Though two supervisors of the defendant company were present after the child was pinned under the car and before the car was backed, these employees, who should have directed and commanded the whole movement of the car after the initial accident, are shown not to have participated in any control of the car whatsoever.

After the backing of the car, it was raised by jacks, which do not appear to have been operated by any of the railway company's employees—in other words, nothing was done by any employee of the company to relieve or to protect the child after the initial accident, except the ill-advised and unfortunate movement of the car in a backward direction. From this act, we are of the opinion that the company, through its agents, was guilty of negligence which could have been avoided by proper supervision of those charged with the handling of the car. It appears to us that careful investigation as to the child's position under the car and careful judgment exercised after such investigation, would have avoided that part of the accident for which the trial court has awarded damages. The amount of damages allowed in this case are, under all of the circumstances before us, in our opinion, just and reasonable.

Plaintiffs and appellees have petitioned this court for an amendment of the judgment appealed from so as to increase the amount of the award from $3,000.00 to $20,000.00. It is argued by their counsel that not only the amount awarded for the damages sustained subsequent to the initial accident is insufficient, but that plaintiff's child was not guilty of contributory negligence, and that the injuries sustained from the initial accident, as well as from what happened subsequently, are of an extent justifying the amount now prayed for.

We have already noted our conclusions to the effect that the railway company was not only not negligent in regard to the initial accident, but that even if the company was held to be negligent, the contributory negligence of the child in this case would bar her recovery from such injuries as arose from the initial accident. She is shown by the evidence to have been of more than ordinary intelligence, and despite her tender age, the jurisprudence of this State is to the effect that children even younger than she, may be held in law to be guilty of contributory negligence barring recovery. (State vs. Stafford, 107 La. 537, 32 South. 83; Lynch vs. Knopp, 118 La. 618, 43 South. 252; Downey vs. Baton Rouge Electric and Gas Co., 122 La. 481, 47 South. 837; Cusimano vs. City of New Orleans, 123 La. 565, 49 South. 195. Cent. Dig. 217.)

The doctrine of contributory negligence applied to a child of such tender years is recognized in this and innumerable States of the Union, and is thus stated in 36 Cyc., page 1564:

"It has been held that a child is guilty of contributory negligence precluding a recovery if he is of sufficient age and intelligence to appreciate danger and take such precautions as such a child would be reasonably expected to take, where he goes upon the tracks without properly looking or listening for an approaching car which he could have discovered in time to avoid the accident, and where he attempts to cross without properly looking or listening immediately behind another car, or where he carelessly or heedlessly attempts to cross in front of a car which he sees approaching in dangerous proximity."

The judgment appealed from is correct and should be affirmed.

It is, therefore, ordered that the judgment herein appealed from be and the same is hereby affirmed at defendants' costs in both courts.

CLAIBORNE, J. Without concurring in that portion of the opinion which charges the child with negligence, I concur in the decree.