## SELIGMAN et ux. v. HOLLADAY et al.*
### No. 4810.

Court of Appeal of Louisiana.
Second Circuit.

May 4, 1934.

Madison, Madison & Fuller, of Bastrop, for appellants.

Hawthorne & Files, of Bastrop, and A. P. Lassiter, of Monroe, for appellees.

DREW, Judge.

Plaintiffs, the parents of the 7 year old Phyllis Rose Seligman, instituted this suit for and on behalf of their minor daughter to recover for injuries sustained by her as the result of being struck by an automobile driven by the 17 year old son of defendant Holladay, and also sued in their own behalf for medical bills they had incurred in treatment for said minor. Holladay and his insurer, the Employers' Liability Assurance Corporation, Limited, are made defendants.

Defendants excepted to the allegations in reference to the medical bills, alleging same were too vague and indefinite to admit of proof. The exception was overruled.

The allegations of negligence on the part of the driver of defendant's car are that he was traveling at an excessive rate of speed and failing to keep a proper lookout, and finally, that he had the last clear chance to avoid the accident.

Defendants denied the allegations of negligence on the part of the driver of the car and, in the alternative, pleaded the contributory negligence of the injured child.

The lower court rendered judgment for plaintiff in the sum of $1,500 against both defendants, and both defendants and plaintiffs have appealed.

The accident occurred on North Washington street in the residential district of the town of Bastrop, La. The time of the accident was about 5 o'clock in the afternoon of August 5, 1932. North Washington street is 30 feet wide from curb to curb and is paved. The injured child was 7 years and practically eleven months of age at the time of the accident, and the driver of the car which ran her down was Rayford Holladay, practically 17 years of age, who at the time was living with his father, R. E. Holladay, Jr., and was driving his father's Chevrolet automobile with the permission and consent of his father. In the car with Rayford Holladay at the time of the accident was one of his friends, Ray Green, who was about the same age. Phyllis Rose Seligman, at the request of her mother, had crossed from the east to the west side of the street to deliver a message to the milkman whose truck was at the time parked on the west side of the street, headed south. On the east side of the street, a short distance north of the milk truck, was another car parked and headed north. Rayford Holladay was traveling north on this street at the time of the accident. After Phyllis Rose Seligman had

delivered the message to the milkman, she at the time standing between the curb and the walk on neutral ground, the milkman pulled off, traveling south. After the truck had traveled a short distance, Phyllis Rose started back to the east side of the street. She was traveling angling across the street, slightly to the north, as though she intended to pass in front of the car parked on the east side of the street. When she had reached the center of the street, or had slightly passed the center, she was struck by the car driven by Rayford Holladay and carried or thrown to the east side of the street, where she was picked up within a few feet of the east curb.

The record does not disclose that the city or town of Bastrop had by ordinance adopted any speed law, and, where same is not shown, the state law fixing the speed limit will govern. The state law in effect at the time of the accident was Act No. 296 of 1928, § 5, which fixed the maximum speed of automobiles in the residential districts of cities or towns at 20 miles per hour. Act No. 21 of 1932, which repeals Act No. 296 of 1928, contains the provision, in section 18 thereof, that the act shall not become effective until January 1, 1933. Without said provision, the act of 1932 would have become effective on July 27, 1932. We know of no constitutional inhibition against the provisions of that act. This last act does not fix any speed limit for cities or towns. We are convinced that the act was not in effect on August 5, 1932, and the provisions of Act No. 296 of 1928 are controlling in this case, and therefore the maximum speed allowed by law on North Washington street in the city or town of Bastrop, La., was 20 miles per hour. The record clearly discloses that the Holladay car at the time of the accident was traveling at a speed of at least 30 miles per hour, or 10 miles per hour faster than allowed by law.

There is strong testimony in the record to substantiate the allegation that, although the car was traveling at excessive speed, Rayford Holladay and his companion, Green, were laughing and talking and were not keeping a proper lookout ahead. However, since Rayford Holladay is positive that he saw the child as she left the curb on the west side of the street, or when she was only 3 or 4 feet away from the curb, and continued to see her until she was struck, we will assume he was keeping a proper lookout and saw that which he should have seen. If Holladay saw the child when she left the curb, as he first testified, then the child, traveling northeasterly, must have covered a distance of 16 or 17 feet before she was struck. If he saw her when she was 3 or 4 feet from the curb, which he later testified, she then traveled 13 or 14 feet before she was struck, after she was seen by Holladay. To accept the last-stated distance would be to give the most favorable interpretation possible to his testimony. The record is not clear as to the manner in which the child was moving across the street. We think a fair interpretation of all the evidence on this point is that she was skipping across the street and could not have been traveling more than 4 or 5 miles per hour. The Holladay car was traveling at least 6 times as fast and would have had to travel at least 78 feet after the driver saw the child enter the street. It is certain that the child never saw the Holladay car until it struck her.

If the driver of the Holladay car had used the proper precaution and not exceeded the speed limit, he could have brought the car to a stop and prevented the accident, or he could have pulled to the left and passed to the rear of the child without striking her. At the time she was struck there was nothing on the half of the street to the rear of the child to prevent the Holladay car from traveling on that side of the street, for the milkmak had gone on down the street at that time. The only reason the child was struck was because of the excessive speed of the Holladay car. The district court, in written reasons for its judgment, held the excessive speed of the Holladay car to be the proximate cause of the accident, and we fully agree with that finding.

The plea of contributory negligence on the part of the child is not sustained, for the reason that, if she had been guilty of negligence, it was not the proximate cause of the accident. The defendants are liable for the damage caused by the accident.

Plaintiffs claimed damage in the following amounts:

Permanent damage to leg, nervous system and spine ............. $11,000.00
Pain and suffering to Phyllis Rose Seligman ..................... 2,500.00
Mental anguish to H. I. Seligman 750.00
Mental anguish to Mrs. Hannah Seligman ..................... 750.00
Hospital, doctors' bills and medicine ......................... 500.00

The lower court awarded damages as follows:

"As to the claim for actual damages of the petitioner, H. I. Seligman, the father of the child, the court holds that there is no proof in the record as to any definite amount; the plaintiff, H. I. Seligman, in the witness' own behalf testified only as to an estimated or approximate amount, but not any definite amount that he had expended or as to any definite amount he had become indebted for as a result of said accident. It is true that Dr. Garnier, while on the witness stand for the plaintiff, testified that he had rendered no bill to Mr. Seligman, but that his bill up to the date of his testimony would be about $550.00. There is no testimony as to what his bill was at the time this petition was filed.

"As to the claim of the plaintiff, H. I. Seligman, and as to the claim of the plaintiff, Mrs. Seligman, for their own benefit for damages due to their mental anguish as a result of this accident, the court holds under the Louisiana law they are not entitled to damages for mental anguish for the accident to Phyllis Rose Seligman, this being a suit for injuries to the minor child and not one for the death of the minor child.

"As to the claim of the plaintiff, H. I. Seligman, for the benefit of his minor child, Phyllis Rose, the court finds from the evidence that this child's left leg was broken; that she was confined to her bed for some time; that it occasioned quite a shock to the said child; and that she suffered a great deal of pain as a result of the same.

"After a careful consideration of the testimony, the court gives judgment in the sum of $500.00 to the father for the benefit of his minor daughter, and against the defendants, R. E. Holladay, Jr., and the Employers' Liability Assurance Corporation, Limited, in solido, on the item for damages for pain and suffering. As to the item of damages claimed for permanent injury, the court finds that fortunately the bone of the leg has healed, thus enabling the child to walk without a limp, however, the x-ray pictures introduced on both sides show that the bone slipped at the point of union, but in spite of this fact, the same had healed, and that very little difference was made in the length of the legs, thus enabling the child to walk without limping; however, the testimony of the doctors for plaintiff, and they are corroborated by Dr. Rodgers, a witness for the defendants, and who was the family physician of the Seligman child, that there still is what might be termed a drooping of the left foot in this child's walk; in other words the left foot is still injured to a certain extent, and due to the time which has elapsed, the court thinks the testimony shows clearly that this is a permanent injury.

"The evidence shows that the child in question is a young girl of fine mental capacity and of a station in life and society where she will necessarily later in life participate in social entertainments, such as dancing, etc., where such injury will be more or less of a handicap.

"After a careful consideration of the testimony, the court has reached the conclusion that there should be judgment against the defendants, R. E. Holladay, Jr., and Employers' Liability Assurance Corporation, in solido, for $1,000.00, payable to the father, for the benefit of the minor child on this item.

"The court holds that there should be further judgment in favor of the plaintiffs and against the defendants, in solido, for all costs of this suit."

We do not think the amount awarded for pain and suffering sufficient. The evidence shows the child was greatly shocked. She was unconscious for 48 hours after the accident and suffered more than usual from such an accident, and, although awards in such instances are more or less arbitrary, we are convinced that for this item of damage there should be an award of $1,250. The award for permanent injury to the leg and foot we think is correct. There is no permanent injury to the spine. We are of the opinion that the doctors' bill of $500 was sufficiently proved and is not excessive. Dr. Garnier testified that on the day of trial he had orally given plaintiff the amount of his charge for his services, which was $500. That was the amount he charged against plaintiff. He had treated the child for many months and was still treating her. This amount should have been allowed. Nothing can be allowed the parents for their mental anguish.

It is therefore decreed that the judgment of the lower court be amended by increasing the amount of the award in favor of plaintiff from $1,500 to $2,750 and, as amended, that the judgment of the lower court is affirmed, with costs.

MILLS, Judge (dissenting).

The child in the case was hidden from the view of the motorist by the milk wagon until the boy driving the car saw her leaving the curb. From that instant on the car and the child were equally in plain view of each other. The law imposes the same duty on each to keep a lookout. The boy saw the child and

immediately applied his brakes until they screamed, in an effort to avoid hitting the child. The child negligently failed to see the car, made no effort to avoid it, but continued to skip or run heedlessly across the street, up to the very instant it was struck. The accident did not occur at an intersection. The motorist had no reason to anticipate the presence of the child.

Such conduct on the part of a pedestrian is the grossest negligence, and that negligence was a proximate cause of the accident. Owens v. Tisdale (La. App.) 153 So. 564.

It constituted contributory negligence on the part of the child, who was almost 8 years of age and unusually bright. Lynch v. Knoop, 118 La. 611, 43 So. 252, 8 L. R. A. (N. S.) 480, 118 Am. St. Rep. 391, 10 Ann. Cas. 807; Downey v. Baton Rouge Electric & Gas Co., 122 La. 481, 47 So. 837; Cusimano v. New Orleans, 123 La. 565, 49 So. 195; Pilsbury v. O'Keefe, 1 La. App. 493.

In Owens v. Tisdale, supra, a pedestrian struck by an automobile, which he failed to see or hear, though it was in plain view not far away when he started across the street from behind a truck, was held guilty of such negligence as would bar recovery.

In Elmendorf et al. v. Clark, 143 La. 971, 79 So. 557, 560, L. R. A. 1918F, 802, the court found the defendant guilty of negligence per se in that he allowed his car to be operated by a chauffeur under the legal age, who was himself guilty of negligence per se in that he failed to sound his horn as required by ordinance, yet held: "Upon reconsideration of this case, we have concluded that the accident resulting in the death of plaintiff's child was attributable more to the negligence of the boy than to that of the defendant, if not entirely to the negligence of the boy in running out into the street from the sidewalk in the middle of a block right in front of the automobile." Ferrand v. W. H. Cook & Co., 146 La. 17, 83 So. 362.

In Hargus v. New Orleans Public Service, Inc., 9 La. App. 117, 118 So. 847, 851, we find: "But, even if the car was running fast, its speed does not diminish the negligence of the deceased child. The car was coming in open view to her sister and to all the other witnesses. To attempt to cross in front of it was the height of imprudence on her part."

Conceding that the child in the present case is shown to be capable of contributory negligence, I cannot agree with the finding of my brothers that the sole proximate cause of the accident was the speed of the car. As shown by the above citations, she was guilty of gross negligence which was a proximate cause of and contributed to the accident, barring recovery in this case.

For the above reasons, I respectfully dissent.