MARGARET POLAND *vs.* UNION RAILROAD COMPANY.

PROVIDENCE—JUNE 14, 1904.

PRESENT: Stiness, C. J., Tillinghast and Blodgett, JJ.

(1)  *Electric Railways.   Negligence.   Contributory Negligence.*

A child eight years of age, who, with an unobstructed view of an approaching car, deliberately crossed in front of it, upon her judgment that she could cross before it reached her, is guilty of contributory negligence so as to bar recovery. An infant, whatever his age, is not in law excused from ex- ercising some care in approaching known places of danger.

TRESPASS ON THE CASE for negligence. Heard on petition of defendant for new trial, and judgment for defendant.

BLODGETT, J. The plaintiff, at the time of the injury of which she complains, was a girl of eight years of age. It ap- pears from the testimony that she had lived at her then resi- dence on Friendship street, in Providence, for a year, and had continuously attended school for about three years, and had been sent habitually by her mother for some time on errands

on Chestnut street, on which she was injured, as well as else-where. On the day in question, shortly after twelve o'clock, noon, she was sent by her mother to purchase a spool of thread, and was injured by a car of the defendant coming from Weybosset street and passing down Chestnut street [while the plaintiff was crossing the latter street. After verdict for the plaintiff the defendant has brought the case to this court on exceptions and petition for a new trial, alleging, among other grounds, that the verdict is contrary to the law and the evidence.

The plaintiff's account of the accident is as follows: "Q. 22. You came down on the right hand of Friendship street? A. Yes, until I came to Chestnut street, and when I came to Chestnut, I turned around Chestnut, until I got opposite the dry goods store. Q. 23. When you came opposite the dry goods store? A. I stood on the curbing and looked up and down the street, the car was at the Chestnut House, and I thought I had plenty of time to cross the street, and I went across the street, and before I knew anything the car knocked me down. Q. 24. Where was the car when you first saw it? A. At the Chestnut House. Q. 25. Was it coming toward you? A. Yes, sir. Q. 26. What direction was it coming? A. It was coming from Weybosset street. Q. 27. How many cars did you see that day? A. One car. Q. 28. Was this the one that was coming from Weybosset street? A. Yes, sir. Q. 29. Before you started to cross Chestnut street? A. Yes, sir. . . . Q. 119. When you started to cross from the right-hand side of Chestnut street to the left-hand side of that street how did you cross that street, do you know? A. I went in a slanting direction. . . . . C. Q 133. You knew Friendship street pretty well, didn't you? A. Yes, sir. C. Q. 134. And Chestnut street pretty well? A. Yes, sir. C. Q. 135. You had been there more than a year, hadn't you? A. Yes, sir. C. Q. 139. Then you had been down Chestnut street, down Friendship street, down to Weybosset street a good many times, hadn't you? A. Yes, sir. . . . C. Q. 186. You went down to opposite the dry goods store? A. Yes, sir. C. Q. 187. Then you started

across the street?   A.   Yes, sir.   C. Q. 188.   Was that the place that you looked up the street to see if the car was coming? A. Yes, sir.   C. Q. 189.   Then you had gotten out on the edge of the curbstone when you looked up?   A.   Yes, sir. C. Q. 190.   You were just about to cross?   A.   Yes, sir. C. Q. 191.   Did you start to run across or walk across?   A. Started to run across.''

(1)      The testimony shows that the width of Chestnut street at the point opposite the dry goods store referred to is twenty-three and eighteen one-hundredths feet between curbs, and that a single line of track is laid in the center of the street at that point, five feet one inch between the rails, and nine and twelve one-hundredths feet from the curb on which plaintiff stood to the nearer rail.   The distance of the car when at the Chestnut Street House obviously depends upon the point from which the measurement is taken, and counsel for plaintiff contends in his brief that this distance may be either fifty eight or eighty-eight feet from the plaintiff's location just before she attempted to cross the street.   To clear the car, then, it is obvious that the plaintiff must traverse nine and twelve one-hundredths feet to the track, five feet one inch between the rails, and a sufficient distance to clear the overhang of the car, or not far from sixteen feet in a right line, and a still greater distance if crossing the street obliquely, before the car could travel eighty-eight feet at most, or fifty-eight feet, if the shorter distance be taken.

The state of facts thus presented by the plaintiff is practically identical with the state of facts presented in the recent case of *Weiss* v. *Metropolitan St. Ry. Co.*, 33 App. Div. 221, and affirmed by the Court of Appeals in 165 N. Y. 665 (1901), in which the complaint was dismissed on the conclusion of the plaintiff's case, and a motion for a new trial was denied.   There the plaintiff was a girl of eight years, the hour was between twelve and one o'clock, the plaintiff had an unobstructed view, and did view from the curbstone an approaching car then more than one hundred feet away.   And the court says:

"It is not even suggested that her movements towards the track, after leaving the curbstone, were impeded in any way;

that her vision was obscured; that her attention was distracted; or, indeed, that anything occurred that could have prevented her seeing the approaching car and avoiding the accident, had she exercised any care whatever. We have thus presented this state of facts: A child eight years and four months old, of ordinary intelligence, good eyesight and hearing, accustomed to go upon the street unattended, regarded by her father as entirely competent to take care of herself, was observed 21 feet from the track upon which she was killed, looking in the direction of an approaching car then over 100 feet away, on a bright day, with nothing to obstruct her view or prevent her seeing the car; she is also observed to start towards the track, and is struck and killed by the car just as she steps upon the first rail, or else in the middle of the track. If it be conceded that the defendant was negligent in not controlling the car in such a way as to prevent the accident, the facts which establish its negligence also establish the negligence of the deceased. No other conclusion can be reached. The child and car were both approaching the same point on the track. The car had 100 feet to go, and the child 21. The child traveled the 21 feet in the same space of time that the car traveled the 100 feet; she had the same opportunity of observing the movements of the car as the gripman did her movements. If the gripman, therefore, was negligent in not seeing her and stopping the car, and thus avoiding the accident, she was equally negligent in not seeing the car, or in stepping in front of it. The defendant was under no more obligation to exercise care to prevent injury to her than she was to exercise care to prevent injury to herself. It is true on account of her age she was not required to exercise that same degree of care which an adult would be required to exercise; nevertheless she was bound to exercise some care, care at least commensurate with her age and intelligence. The rule seems to be well settled that an infant, whatever his age may be, is not in law excused from exercising some care in approaching and passing known places of danger. . . .

The case at bar is much like *Fenton* v. *Second Avenue Railroad* (126 N. Y. 625), where a boy nearly ten years old was

killed, and the observation made by the Court of Appeals in that case in reversing the judgment is quite applicable here. 'There was nothing,' says the court, 'requiring this boy to run across the track at this particular place and time. If he had walked he probably would not have fallen, and if he had waited two or three seconds the car would have passed, and he could then have gone over the street in safety.' . . .

"It would seem that the deceased either did not look to see whether a car was approaching, or, if she did, then she blindly and heedlessly walked in front of it. In either case, one is irresistibly led to the conclusion that her death resulted in part, at least, from her own negligence." ·

So in the case of *Brady* v. *Consolidated Traction Co.*, 63 N. J. Law, 25 (1899), the court say, of a boy of nine and one-half years of age: "As was said in *West Jersey Railroad Co.* v. *Ewan,* 26 *Vroom,* 574, 576, 'there is a substantial difference between being surprised by an unforeseen peril and being overtaken by one apprehended and recklessly incurred.' This difference is of special importance in dealing with children; for, to expect a danger where none is seen, requires a larger experience and the exercise of abler deductive faculties than does the appreciation of a manifest peril.

"The case in hand presents the latter condition. The plaintiff saw the car approaching, and there was no element of danger which he did not perceive or which a boy of his years was not capable of fully appreciating. He chose to run in front of the car, on his judgment that he could cross before it reached him, in spite of the evident danger of the attempt, and we think it should be held that he took the risk of failing in the effort which he designedly made."

And thereupon the court granted the defendant a new trial. Thereafter the jury rendered a second verdict in favor of the plaintiff and the case came again before the court in 64 N. J. Law, 373 (1900), the plaintiff changing his evidence as follows:

"The evidence given by the plaintiff on the second trial is in absolute contradiction of that given by him on previous trial. Before, he repeatedly swore that he heard the gong of the car ring and saw the car approaching before he went on the

track. Upon this trial he swore that he neither heard the car nor the gong, and that he did not see the car until he was struck. He admitted that he had sworn differently at the former trial, and gave as the only reason that he did not understand.

"The plaintiff was a foot passenger crossing a street containing a car track. A duty devolved upon him before crossing to use his powers of observation to observe approaching cars which are within a distance, if run at lawful speed, to put him in danger. *Newark Passenger Railway Co.* v. *Block*, 26 *Vroom*, 605. Such a duty devolved upon an intelligent youth who was *sui juris*, as plaintiff is admitted to be. *Sheets* v. *Connolly Railroad Co.*, 25 Id. 518; *North Hudson Railway Co.* v. *Flanagan*, 28 Id. 696.

"The duty of observation required from children may differ in extent and degree from that required from an adult. Judgment which a jury might find lacking in prudence if formed by a person of mature years might perhaps be found not to be lacking in prudence if formed by a child, but the child is not excused from some duty of observation.

"Had plaintiff performed this duty in the very slightest degree he would have perceived the approaching car in time to avoid it, for there was admittedly no obstacle in the way to obstruct his view. That he did not see the car establishes the fact that he did not look, as required even of a child. *Righter* v. *Pennsylvania Railroad Co.*, 13 Vroom 180. The case was tried on the theory that no negligence was chargeable to a child of plaintiff's age in playing upon a public street and running in play (as plaintiff did) across the street. It is unnecessary to determine whether that theory is correct, because a verdict attributing to plaintiff the exercise of the care proper for a boy of his age, and finding no negligence in running across the street without any observation as to approaching cars, is a verdict against evidence."

And thereupon the verdict was set aside.

In *Morey* v. *Gloucester Street Railway Company*, 171 Mass. 164 (1898), the court sustained the direction of a verdict for the defendant in a similar case, brought by a boy of eight years, saying:

"The evidence was undisputed, and the fact can not be doubted that the car could be seen for a considerable distance as it was approaching. The boy's view was unobstructed, and the sound of the coming car could be plainly heard. The railway had but a single track, and the distance from the curbstone of the narrow sidewalk to the nearest rail was only about twelve feet. According to the testimony of one of the plaintiff's witnesses, the boy 'darted right out quickly, as quickly as most boys of his age are able to go; that it did not take more than a second to go the ten feet from the sidewalk to the rail; that it all happened in the twinkling of an eye.' The language used by the other witnesses was similar, and there was no dispute that he ran rapidly from the walk to the track in front of the car. The evidence discloses no reason or excuse for his going, and we are of opinion that his conduct, judged by the standard of the care of boys of common prudence, was such as would generally be condemned as careless."

And in *Henderson* v. *Citizens' St. R. Co.*, 116 Mich. 368 (1898), a judgment in favor of a boy of eight years was reversed, the court saying:

"It is evident that this verdict can not stand, but the more doubtful question is presented as to whether the first request of defendant (to wit,—under the pleadings and proofs, the plaintiff can not recover) should have been given. In my opinion, upon this record, it should have been. See *Ecliff* v. *Railway Co.*, 64 Mich. 196. The plaintiff himself testified that this boy had intelligence enough to appreciate the danger. He placed the boy on the stand, and he so testified. The evidence clearly shows that there was nothing except this wagon and the east-bound car to obstruct the vision. Witnesses for the plaintiff state that, if the boy had looked in the direction of the car, he could have seen it. It was but common prudence in crossing such a thoroughfare to look, not only for the car, but for any vehicle which might be coming. Injury would have occurred from collision with an ordinary wagon just as surely as from running into this car, and, from the testimony of the lad himself, he had intelligence enough

at the time to know this. Why, then, should it be left for the jury to say that he had not?"

And see *Ryan* v. *LaCrosse City R. Co.*, 108 Wis. 122 (1900); *Wills* v. *Ashland Light, Power & Street R. Co.*, *Ib.* p. 264.

Upon both principle and authority, therefore, we are of opinion that this plaintiff was guilty of contributory negligence under the circumstances of this case, and that she is not entitled to recover.

Case remitted to Common Pleas Division, with direction to enter judgment for defendant.

TILLINGHAST, J. I concur in the foregoing opinon in so far as it states the general rule of law applicable to the case, and also in so far as it holds that the verdict was against the evidence. But I think that a new trial should be granted, which is all the defendant asks for, instead of directing judgment for the defendant.

*Cooney & Cahill*, for plaintiff.

*Henry W. Hayes, Frank T. Easton, and Lefferts S. Hoffman,* for defendant.