(47 South. 837.)

No. 17,157.

DOWNEY et ux. v. BATON ROUGE ELECTRIC & GAS CO. et al.

(Dec. 14, 1908.)

1. STREET RAILROADS (§ 100*) — INJURIES — CONTRIBUTORY NEGLIGENCE—CHILDREN.

Plaintiffs' son, between eight and nine years of age, a well-grown, intelligent child, while standing on a sidewalk unattended, saw three platform cars belonging to defendant, which were being pushed down the track in the street by a motor car, and, when they were about opposite where he stood, he attempted to run across the street ahead of the train and was killed. *Held*, that the child was guilty of contributory negligence.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 217; Dec. Dig. § 100.*]

2. STREET RAILROADS (§ 93*) — INJURIES TO PERSONS ON TRACKS—LOOKOUT ON CAR.

Plaintiffs' child was run over and killed by a train of street cars composed of three platform cars pushed by motor car. The motorman was able to see ahead of the three cars, which extended only about 60 feet ahead of him. *Held*, that any necessity for a lookout at the front end of the train was supplied by a laborer who sat there in full view of the motorman, and that the accident was in no way the result of the absence of a lookout, since it was not contended that the motorman did not see the boy when he manifested his intention of trying to cross, ahead of the train.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 93.*]

3. STREET RAILROADS (§ 102*)—INJURIES—DEFECTS IN EQUIPMENT—BRAKES.

While a train of three platform cars was being pushed by a motor car along defendant's road in a street, plaintiffs' son, between eight and nine years of age, being aware of the approach of the train, attempted to cross the street in front of it and was killed. *Held* that, as the child was guilty of contributory negligence, the fact that the platform cars were not provided with brakes was not material, it being customary to operate construction trains in that way.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 102.*]

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; Harney Felix Brunot, Judge.

Action by Lawrence Downey and wife against the Baton Rouge Electric & Gas Company and others. Judgment for plaintiffs, and defendants appeal. Judgment set aside, and suit dismissed.

Laycock & Beale, Foster, Milling & Godchaux, and Alexis Brian, for appellants. Thomas Jones Cross and Thomas Jones Kernan, for appellees.

PROVOSTY, J. One of the passenger electric cars of the defendant company, doing service as a motor car, was going down Government street in the city of Baton Rouge, pushing ahead of it three platform cars loaded with débris from a torn-up street pavement. When the front end of the train reached St. Napoleon street, which crosses Government street at right angles, the little

son of plaintiffs, a child 8 years and 10 months old, and several other persons were on the sidewalk at the lower, or further, left-hand corner. The child suddenly darted from among the crowd, and attempted to cross the street ahead of the train, and was run over and killed. This suit is in damages for his death.

The train must have been moving pretty fast, as the track had to be kept clear for the passenger service; but not negligently fast, or faster than customary. The grade being downward (2 per cent.) the motorman had turned off his current, and twice tightened his brake. From the sidewalk to the track is 22 feet, and down a pretty steep grade. How much of this distance the boy had covered when his intention to cross first manifested itself, and how close the head of the train was then to the line of his path, can be gathered only somewhat vaguely.

Mrs. Rex, who was one of the persons at the corner, says that she did not see the boy until he jumped past her; that at that moment the head of the train was "about halfway between the crossing and the street driveway."

Charles Banks, a colored laborer, was seated with his legs hanging over the front end of the first platform car. He testifies that the boy, when he first saw him, was on the sidewalk at the far, or lower, corner, and that the head of the train had then reached Doiron store, which is at the near, or upper, corner, the corner opposite and across from there the boy was. He also says that the head of the train was midway of the Doiron store, and that it is a long building. That when he next saw the boy he had started to run, and a lady had holloaed to him to stop, and that he had "kinder slowed," and that at that moment he was about 12 feet from the track, and the head of the train was nearer the crossing than he was to the track. That at that moment the car jerked, as if the motorman had put on the brake.

Alec Allen, colored laborer, was seated with his legs hanging over the side of the front car about four feet from the head of the car, on the side on which the boy was. He testified:

"He was running, playing on the banquette with a little girl, and when the car got nearly to him he turned the hand loose, and it seemed like he started to run across the track, and some ladies on the banquette holloaed out 'My, frightful!' and he stopped, and when the car got nearly to him he made another break to run across the track."

He was then about 8½ feet from the head of the train.

J. D. Austin was seated on the front steps of the passenger or motor car, on the same side on which the boy was. He testifies that, when he saw the boy "break to run," the head of the train was "just entering the intersection of St. Napoleon street." He also says that the boy was standing still when he first saw him, and that the head of the train was then about 20 feet from the crossing on which the boy ran.

The motorman testifies that he saw the boy "dart from the crowd and start across the street"; that at that moment "the front end of the flat car was between five or ten feet away from the crossing."

Whether it is to the lower crossing, that upon which the boy was running, or to the other crossing, this witness and Mrs. Rex have reference, it is impossible to say from their testimony. Judging from the testimony of the two colored men, it was the lower crossing.

Certain it is that every one who saw the movement of the little boy knew that he was bound to be run over.

We think that the death of the boy was due to his own rash act, and not to the negligence of the defendant company, if any negligence there was. He was a healthy, well-grown, intelligent child, and of an age when intelligent children must be held to know better than run upon a railway track

a few feet ahead of a moving car. He saw the approaching train, and voluntarily attempted to pass ahead of it. His parents considered him competent to take care of himself, since they allowed him to go alone in the street. In this instance he had gone out with their express consent. In regard to the age when children are chargeable with contributory negligence, see Murphy v. Boston Electric Railroad Co., 188 Mass. 8, 73 N. E. 1018; Poland v. Union R. Co., 26 R. I. 215, 58 Atl. 653; Weiss v. Metropolitan Street R. Co., 33 App. Div. 221, 52 N. Y. Supp. 449, affirmed in 165 N. Y. 665, 59 N. E. 1132; Morey v. Gloucester St. R. Co., 171 Mass. 164, 50 N. E. 30; Costello v. Third Ave. R. Co., 26 App. Div. 48, 49 N. Y. Supp. 868, reversed in 161 N. Y. 317, 55 N. E. 897; Ryan v. Lacrosse City R. Co., 108 Wis. 122, 83 N. W. 770; Meloy v. Philadelphia Rapid Transit Co., 217 Pa. 189, 66 Atl. 253; Fitzhenry v. Consolidated Traction Co., 64 N. J. Law, 674, 46 Atl. 698; and particularly Lynch v. Knoop, 118 La. 618, 43 South. 252, 8 L. R. A. (N. S.) 480, 118 Am. St. Rep. 391.

As the child put its foot on the first, or near, rail, the car was upon him; he threw out his hand as if to push it from him; it knocked him down between the tracks; the first wheel ran over his foot; and, some way or other, he became fastened to the second wheel of the second car, which whirled him around, and finally threw him to the side of the track, after having run over and mangled him. He was still alive when picked up. He was found 40 feet below the crossing; and the trace of blood upon the rail, showing where the wheel had passed over his body, was 30 feet from the crossing.

The learned counsel for plaintiff argue that so very little time would have been required for the child to get across safe that the slightest check in the speed of the car would have sufficed, and that there would have been such check if the train had been properly equipped; and, again, that the fatal injury having been received 30 feet below the crossing, the train could have been stopped in time if it had been properly equipped.

It is said that there was no lookout at the front end of the train; that the flat cars were unprovided with brakes, and that the motorman was incompetent.

We fail to see why Charles Banks, who sat at the head of the train in full view of the motorman, could not be said to have been a lookout; nor, for the matter of that, why a lookout was needed at all, since the motorman could see ahead just as well as if the three cars, which extended only about 60 feet ahead, had not been there; nor, finally, that there was any causal connection between the absence of a lookout and the injury, since it is not pretended that the motorman did not see the boy the very moment he, by his movements, manifested an intention of trying to cross ahead of the train. Nor do we find that the motorman was incompetent. As for the flat cars having been unprovided with brakes, it is shown that in New Orleans and other cities construction trains of this kind are operated in that way. Whether such custom would protect the defendant company, in the absence of the contributory negligence of the boy, is a question we need not decide. The last chance doctrine is not invoked, and could have no application to the case.

Judgment set aside, and suit dismissed.