## ANSLEY v. CITY OF NEW ORLEANS.*

### No. 16315.

Court of Appeal of Louisiana. Orleans.

June 1, 1936.

E. M. Robbert, City Atty., and B. Curtis, Asst.. City Atty., both of New Orleans, for appellant.

Porteous, Johnson & Humphrey and Wm. A. Porteous, Jr., all of New Orleans, for appellee.

JANVIER, Judge.

At about 5 o'clock in the late afternoon of January 16, 1934, Mrs. Eugene Ansley was walking along the lake side of St. Charles street. She crossed Union street and, as she was stepping from the street to the curb, on the upper side, she caught her foot in the metal edging of the sidewalk curbing which had become displaced and she fell, sustaining physical injuries. She charges that the city of New Orleans was negligent in allowing the said metal strip to become displaced and that that said negligence was the proximate cause of her injuries, and she seeks recovery from the city to compensate her for her suffering, her medical expenses, and her loss of earnings resulting from the fact that she was unable to work for a considerable period of time.

The city of New Orleans denies the material allegations of plaintiff's petition, and particularly avers that it had neither actual nor constructive knowledge of the existence of the defect, and it charges that, if the defect did exist and if it was in any way negligent in permitting it to exist, nevertheless the true cause of plaintiff's injuries was her own contributory negligence in not noticing the apparent and obvious condition of the sidewalk.

In the court below there was judgment in favor of plaintiff for $2,500, and defendant has appealed.

A great deal of space and time have been devoted by counsel, for both parties, to a discussion of the law concerning the liability of municipalities for injuries resulting from defective sidewalks and many authorities have been cited concerning the absence of liability where there is no knowledge, either actual or constructive, of the condition of such sidewalks. But before considering the evidence touching upon those facts concerning knowledge on the part of the city of the existence of the defect, we deem it advisable to investigate the evidence concerning the actions of plaintiff herself because, whatever may have been the negligence on the part of the municipality, there can be no recovery by plaintiff if it appears that she herself, by the exercise of ordinary care, could have avoided the accident.

The evidence shows that the metal strip, which should have been embedded in the edge of the concrete sidewalk, had become displaced and that, at the time, it extended out over the street a few inches, probably three or four, though some of the witnesses state that it extended out as much as six inches.

It is the contention of plaintiff that there was no duty, and that there is no duty in a pedestrian generally, to focus attention upon a sidewalk, and that a person is justified in assuming that such a sidewalk is safe and that no danger will result from walking along it without looking at it at all; in other words, that a pedestrian may proceed along a sidewalk with his eyes fixed horizontally and without glancing at the sidewalk from time to time to see that there is no defect or danger.

▉ It is true, that a pedestrian is not required to keep his eyes constantly focused upon the sidewalk and that he may assume that the sidewalk is reasonably safe for

*Rehearing denied June 22, 1936.

pedestrian travel; nevertheless, he must see those defects which are obvious and apparent and which would be noticed by the reasonably and ordinarily prudent passerby.

We have carefully read the evidence, particularly that submitted on behalf of plaintiff, and we have noticed, in the testimony of nearly all of her witnesses, statements which indicate very plainly an apparent belief on the part of those witnesses that the defect, of which Mrs. Ansley complains, could have been noticed by any person exercising ordinary care.

Arch Venable, a witness placed upon the stand by plaintiff, made the following statement:

"Anybody could see it anyway you looked at it almost."

The pertinent testimony given on this point by Mrs. Hilda Carlson, another witness who testified on behalf of Mrs. Ansley, is as follows:

"Q. Did you see what you say was a defect in the street? A. Yes, sir.

"Q. You could see it as you passed? A. Yes, sir, very plainly.

"Q. Was it perfectly obvious to any pedestrian walking up and down there, that the sidewalk was not in good condition? A. That is very true, yes, sir."

Mrs. Gretchen Masterson had this to say about the defective sidewalk:

"Q. Was that condition obvious when you looked at it? A. Yes, sir.

"Q. Could you see it when you walked up St. Charles Street? A. Oh, yes sir."

Lester Jeansonne was another witness produced by plaintiff, and he said:

"Q. If you were looking where you were going, is there anything to prevent you from seeing it? A. I would not think so.

"Q. And it is only if you held your head up in the air that you would not see it? A. That is the only way I figure that you would not see it, if you held your head up."

Mrs. Margaret E. Countryman stated that the condition of the sidewalk was obvious and that it could be seen at night as well as in the day.

Mrs. Alice Williams, a woman engaged in selling newspapers at that corner and who had been stationed there a very long time, testified that she knew Mrs. Ansley and that she had seen her pass many times; in fact, that she had been "for years passing."

It appears from the record that the eyesight of Mrs. Ansley was good, and the accident occurred in the daytime, and that it occurred as she was stepping from the street to the curbing. There can be no doubt that the duty of a pedestrian to look when stepping from the street to the curb is somewhat greater than it is while walking along a level sidewalk. At any rate, we cannot view the evidence of plaintiff's witnesses without reaching the conclusion that she was obviously and grossly negligent in not noticing the defect which was apparent to all others who passed by and which appears so plainly in the photographs. It is true that, in almost every instance, after each of plaintiff's witnesses had given the evidence to which we have above referred and from which we have quoted, plaintiff's counsel, on redirect examination, elicited from each the opinion that a person walking with his eyes on a level possibly could not notice the defect; but the first reaction of each of the witnesses to the questions asked shows that each believed that the defect was open and apparent and could have been easily seen.

Our attention is directed to the case of Miller v. City of New Orleans (La.App.) 152 So. 141, in which the facts were remarkably similar to those which we find in this record, and in which we held the city of New Orleans liable, and in which we also held that Miller, the plaintiff, was not himself contributorily negligent. In the facts of the Miller Case we find sufficient differences to justify a different conclusion. There, Miller was walking along the sidewalk at night and, as he attempted to step from the curb to the street, his heel caught in the metal edging which had become displaced and which extended out over the street and was also bent somewhat downward. We held that Miller, in stepping from the sidewalk down to the street below, could not be charged with negligence in failing to see the metal edging which was dark in color and which, as a matter of fact, was somewhat hidden by the edge of the curbing. The situation here was quite different because of the daylight and because of the fact that the metal strip did not extend downward, but possibly slightly upward, and because the plaintiff was stepping up and not down. A person who steps from the street to the sidewalk, elevated somewhat above the street, should exercise some care in looking at the spot on which his foot is to be placed.

 

The record convinces us that Mrs. Ansley was herself negligent and, consequently, she cannot be permitted to recover.

Our brother of the district court gave written reasons for his judgment in which he found that the city was negligent, but he did not discuss the charge of contributory negligence which, we believe, is the vital issue in this case.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that the plaintiff's suit be and it is dismissed, at her cost.

Reversed.