## DOUGA v. ANCONA BAKING CO., Inc.
### No. 17264.

Court of Appeal of Louisiana. Orleans.
Jan. 22, 1940.

Rehearing Denied Feb. 26, 1940.

Writ of Certiorari Denied April 1, 1940.

Porteous, Johnson & Humphrey, of New Orleans, for appellant.

O'Keefe, Davison & Granzin, of New Orleans, for appellee.

JANVIER, Judge.

At about 8 o'clock on the evening of May 4, 1938, at the corner of St. Thomas and First Streets in this city, Mary Ellen Douga, a young girl, at that time 9½ years of age, sustained injuries when she fell over an overturned breadbox which was lying on the sidewalk alongside her aunt's barroom and grocery store located on that corner. The box, as it lay on the sidewalk, was from 14 to 18 inches in height, and extended approximately 3 feet in each of the other two directions. It had been provided by a delivery truck driver of defendant, Ancona Baking Company, Inc., so that the daily supply of bread for the grocery which was delivered before the opening of the store might be protected from the weather and against pilferage.

When the truck driver, Clay Alvarado, first brought the box to the grocery store, he placed it against the outside wall of the store, on the sidewalk, and did not fasten it in any manner to the said side wall, and it appears that in most instances such boxes are not affixed to anything, but are merely placed on the sidewalk, as this one was. Later, on several occasions, it was found that the box had been turned over by unknown persons, and, on at least one other occasion, it had been placed in the street.

At the suggestion of the store owner, Alvarado agreed to affix it to the side of the said building. This he did, making use of two nails—either 8 or 10-penny—and a hammer; which, he says, were furnished to him by the store proprietor. It seems certain that on one occasion after it was so nailed it was pulled away from the wall by unknown persons, and there is evidence to the effect that the defendant's said driver knew that this had been done and that, instead of again nailing the box to the wall, he merely placed it back into its proper position against the wall and allowed the nails to protrude from the rear of the box toward the side of the wall.

Alvarado denies that he knew that the box had been so removed and states that, on his last trip prior to the accident, it was in its proper place and, so far as he knew, was still affixed to the wall. On this point, then, there is a conflict in the evidence.

There is also a dispute as to whether or not Alvarado produced the nails and the hammer which he used in affixing the box in the first instance, he stating that they were furnished him by the owner of the store, whereas plaintiff contends that he produced them from defendant's truck.

On the night on which the accident occurred, the little girl, who states that she frequently visited her aunt who owns the barroom and store, was in the barroom, which opens upon the sidewalk about 18 or 20 feet from the spot at which she fell over the box. She was an unusually intelligent child, being almost first in her classes at school, and she seems to have answered the telephone frequently, as she did a moment or so before the accident. This call was for a neighbor. She received permission to summon the neighbor and stepped upon the sidewalk and, after traversing the 18 or 20 feet between the door and the then overturned box, fell over it and sustained a severe cut when her leg came into contact with one of the nails which protruded from the back of the overturned box.

Her father, on her behalf, has brought the present suit and claims $7,500 for her use and benefit, and for himself seeks $32.-50 as the amount he has expended for medical bills, et cetera. He charges that there was negligence in the driver of the truck in affixing the box with nails instead of screws, and that there was also negligence in that later, when the said truck driver was advised that the box had been detached, he did not remove the protruding nails, but merely placed the box back into its original position, leaving the nails still protruding from its rear.

Defendant maintains that there was no duty to affix the box and that Alvarado did it at the request of the little girl's aunt with nails and a hammer furnished by her.

Defendant also maintains that Alvarado did not know that the box had been pulled loose from the side of the building and that he did not know of the protruding nails, and particularly defendant contends that, even if its driver was negligent in any of the particulars charged, the legal cause of the accident was the carelessness of the little girl herself in falling over the box, which was plainly visible.

The case was tried below by a jury, which rendered a verdict remarkable in that, though it made no mention thereof, it obviously rejected the claim on behalf of the little girl herself, and yet ran in favor of the father for $32.50 on his own behalf. Application for new trial was refused by the district judge, who gave the following written reasons for his refusal: "My reason for refusing a new trial is that as all of the evidence has been carefully presented by both sides, an appeal to the Court of Appeals would be, in my opinion, more expeditious. This judgment is contradictory. The minor's claim should either be allowed or disallowed."

Plaintiff, on behalf of the little girl, has appealed.

We cannot definitely tell from his reasons whether our brother below felt that the jury had erred on the main demand in not finding in favor of the little girl, or whether he meant that the verdict was unexplainable since it should not have been in favor of the father unless based upon the liability of defendant, in which case it should also have run in favor of the child.

There are certain facts not in controversy, upon which we first fix our attention because they seem to show a carelessness on the part of the unfortunate little girl without which the accident would not have occurred, regardless of whether there was, on the part of Alvarado, negligence legally chargeable to defendant corporation. These facts are that the box was quite large, was conspicuously painted, and was lying on the sidewalk almost

directly under a bright 300-watt street light. As we have remarked, the box, lying on its front, extended above the sidewalk between 14 and 18 inches, and therefore, because of its height and because of its color, it must have been quite conspicuous. It was lying almost directly in the center of the sidewalk, only three or four feet from the corner of the street. There was no balcony nor any other obstruction to screen it from the street light, which was almost directly overhead.

Mrs. Douga, the mother of the little girl, concerning the light, testified as follows:

"Q. Is that a dull light or a very bright light? A. Well, it is just the same as any other light on a corner.

"Q. Well now, you have had occasion to either go in or out of that place of business after dark. Did you have any difficulty in seeing anything? A. No, I didn't."

\*　　\*　　\*　　\*　　\*　　\*

"Q. Is there enough light for you to see? A. Yes.

"Q. Plainly? A. Yes."

The aunt, Mrs. Schmaltz, the owner of the store, said that it is "just the same light as you have at other corners", and the little girl herself states that she knows of no reason why she did not see the box and that probably she just wasn't looking. She testified as follows:

"Q. Well, now, what prevented you, with that light there so close to the box, from seeing the box? A. I don't know. I didn't even take notice of it."

\*　　\*　　\*　　\*　　\*　　\*

"Q. Well, it looks like, Mary Ellen, that you were not looking where you were going. Is that right? A. Maybe so.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Well, in other words, you think so, that you were not looking where you were going? A. Yes, sir.

"Q. Is that right? A. Yes, sir."

■■ We think it beyond question that, generally speaking, a normal child of 9½ years has sufficient intelligence and discretion to warrant the belief that such a child may be guilty of contributory negligence if the danger is such as a child of that age should understand and appreciate. Surely a child of 9 years should understand such danger as existed here. Again we remark that the little girl in question was quite a bright child.

In Lynch v. Knoop, 118 La. 611, 43 So. 252, 8 L.R.A.,N.S., 480, 118 Am.St.Rep. 391, 10 Ann.Cas. 807, it was held that a child 8 years old was capable of being guilty of contributory negligence.

In Cusimano v. City of New Orleans, 123 La. 565, 49 So. 195, 198, the child involved was a girl ten years of age. The court said:

"\* \* \* even young persons must not be dangerously imprudent. \* \* \*

"But they cannot be absolved from all responsibility. If they fail to exercise a prudence reasonable to be expected from persons of their age, others cannot be made responsible for them."

In Vergo v. Shreveport Railroad Company, 19 La.App. 647, 139 So. 737, a boy 10 years of age was held guilty of contributory negligence, and in Downey v. Baton Rouge Electric & Gas Company, 122 La. 481, 47 So. 837, it was held that the contributory negligence of a boy 9 years of age was the proximate cause of the accident and prevented recovery.

■ It is very true that a pedestrian on a sidewalk is not required to keep his eyes constantly fixed on the sidewalk, but it is equally true that such a pedestrian cannot entirely neglect to use ordinary precautions in observing where he is going.

In Glatstein v. City of Shreveport, La. App., 149 So. 158, 159, the court said:

"The law requires that the pedestrian be observant of where and how he is going so that he may avoid dangers which ordinary care and prudence would disclose. While he is not bound to look for hidden dangers, he is required to walk with his eyes open, to observe his course, to see what is open and apparent, and to use that degree of care which the surrounding circumstances would dictate to a person of ordinary reasonable prudence.

"Though a pedestrian, in the absence of knowledge to the contrary, has a right to presume that a sidewalk is reasonably safe, this presumption does not permit him to be heedless of his safety or to neglect to use ordinary precautions in observing where he is going and all obvious impediments in his way."

In Antoine v. Saxton Hardware Company, 10 La.App. 427, 121 So. 371, 372, we held that the contributory negligence of plaintiff barred recovery. There plaintiff had walked into the platform of a sidewalk weighing machine. We said: "Even if

we felt, however, that plaintiff's theory as to the facts is the correct one, we could not award her a judgment, since to walk over such a machine as the one in question, even admitting that the placing of it on the sidewalk was negligence, constituted contributory negligence, and bars recovery. Such an accident could not happen to a person using the sense of sight, as a pedestrian is always bound to do."

And in Ansley v. City of New Orleans, La.App., 168 So. 343, is found the following: "Pedestrian may assume sidewalk is reasonably safe and need not keep his eyes constantly focused upon sidewalk but pedestrian must see those defects which are obvious and apparent and which would be noticed by reasonably and ordinarily prudent passerby." (Syllabus.)

Plaintiff relies on certain cases as authority for the proposition that the pedestrian on the sidewalk need exercise practically no care at all. We are referred to Degeneres v. Pan-American Petroleum Corporation, La.App., 153 So. 481, Lemoine v. City of Alexandria, 151 La. 562, 92 So. 58, Weber v. Union Development Company, Ltd., 118 La. 77, 78, 42 So. 652, 12 Ann.Cas. 1012, and Strickland v. Istrouma Water Company, Inc., La.App., 164 So. 347, 348.

In the Strickland case the danger resulted from an uncovered water meter hole in the sidewalk and not from something lying on the sidewalk and extending above it in plain view. The court said that the hole was "not apt to be observed by one walking ahead". Surely, the same cannot be said here.

In the Weber case the obstruction over which plaintiff fell was a "plank just high enough from the ground for the foot of a pedestrian to get under it". The accident occurred at night and the defendant had failed to place a red lantern on the obstruction, which, the court said, "was weather-stained to almost the color of the asphalt on which it stood, so that it was inconspicuous and liable to be run against by passers * * *".

In the Lemoine case the obstruction consisted of cross-ties which had been placed on the public sidewalk. But there was no light by which pedestrians might discover the presence of the cross-ties, as there obviously was in the case at bar.

In the Degeneres case the obstruction was a small protruding pipe placed in the sidewalk by the defendant oil company near one of its automobile service stations. The court said that this pipe "was not an obvious object to people walking along the sidewalk in front of the station and not purposely looking downward for some obstruction of the kind." [153 So. 483.]

We think none of those cases is applicable here for the reasons which we have stated: That the light was abundant and the obstruction was obvious to anyone paying the slightest attention. As we have said, in view of the contributory negligence of the young girl herself, we find no necessity to consider or discuss the question of whether or not defendant was at fault in any of the particulars charged.

The verdict, therefore, insofar as it did not contain an award in favor of the child, was correct.

■■ It is strange indeed that the jury should have found in favor of the child's father for the reason that, since the accident was the result of the contributory negligence of the child herself, it is obvious that the father could not recover for the expense to which he was put. It is well settled that the contributory negligence of an injured child is a defense to an action by the parent to recover money expended for medical attendance upon the child. Callies v. Reliance Laundry Company, 188 Wis. 376, 206 N.W. 198, 42 A. L.R. 712; Farrell v. Greene, 110 Vt. 92, 2 A.2d 196; 46 C.J., 1303; 20 R.C.L. 617, Note, 42 A.L.R. 717.

■ However, the defendant has not appealed from the judgment running against it, nor answered the appeal taken by plaintiff, and, therefore, we are powerless to reverse the judgment insofar as it runs in favor of the father individually.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be and it is affirmed, at the cost of appellant.

Affirmed.