140 So.2d 676 (1962)
Joseph L. JUHAS, Jr., et al.
v.
AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA.
No. 519.
Court of Appeal of Louisiana, Fourth Circuit.
May 7, 1962.
*677 James T. Flanagan, New Orleans, for plaintiffs-appellees.
Sessions, Fishman, Rosenson & Snellings, Curtis R. Boisfontaine, New Orleans, for defendant-appellant.
Before YARRUT, JOHNSON and HALL, JJ.
JOHNSON, Judge.
Petitioner lives with his family at 413 Carnation Street in Metairie, Jefferson Parish. Across the street from his home is land belonging to the Bridgedale Baptist Church. For some time there was a sign nailed to a post near the street on that lot which said "Bridgedale Baptist Church Playground." There was no playground equipment of any kind on that portion of the lot. There was a fenced area of the back end of that lot in which slides, swings and other playground equipment for small children were located. On the front near the street the church had placed a baptismal tank with its bottom up. This metal tank was rectangular in shape and measured about three feet wide, five feet high and eight feet long. On April 29, 1960, petitioner's daughter, Mary Margaret Juhas, who was eleven years old, and four other children were playing on that tank when Mary Margaret Juhas fell or was shoved off and her left arm was broken in the fall, and petitioner brought this suit against the church's liability insurance company for damages on behalf of his minor daughter and to recover for himself the medical and other expenditures incident to his daughter's personal injuries. The District Court rendered judgment for $612.00 in favor of the father, individually, and for $3,000.00 for the benefit of the minor daughter. The defendant has appealed.
Plaintiffs' petition alleges that the church placed the tank on its property near the sign which designated the area as a playground, thus creating an attractive nuisance constituting negligence on the part of the church, which negligence resulted in the personal injury of plaintiff's minor daughter.
*678 The defendant's answer to the said petition admits that the said church owned said tank and had placed it in an inverted position on the vacant portion of the lot belonging to the church; that the accident was not caused by any fault of the church or any of its members or employees, but was caused by the negligence of E. P. Adams, another youth, by jerking Mary Margaret Juhas in such a manner as to cause her to lose balance and fall to the ground; that the accident was caused by the negligence of Mary Margaret Juhas, a bright child, aged eleven and one-half years, in grabbing E. P. Adams for the purpose of pulling him off the tank, thereby causing young Adams in turn to pull her off the tank; that the parents of Mary Margaret Juhas were negligent in failing to properly supervise their daughter, in failing to warn her against such rough play on the top of the tank; that in the alternative, Mary Margaret Juhas was guilty of contributory negligence in trying to pull the said E. P. Adams off the tank, thereby causing him to try in turn to pull her off, and the answer denies that the tank was an attractive nuisance.
The subject of what type of object constitutes an attractive nuisance was thoroughly discussed by Judge Janvier, of this Court, in the case of Genovese v. New Orleans Public Service, Inc., 45 So.2d 642, where the Court went into an extended, detailed analysis of many authorities, and it would be largely repetitious to attempt the same here. That decision applies the almost universal rule, recognized in every jurisdiction throughout the nation, that an object is not an attractive nuisance unless there is present in it some latent characteristic which amounts to a hidden or unknown trap to ensnare a child who is too young and immature mentally to appreciate and understand the danger.
Certainly, this tank in its inverted position was not more dangerous than a barbecue table, as suggested by counsel for defendant, if placed on the vacant lot for convenient use. The stump of a large tree cut level would not be an example of an attractive nuisance, but, like a table, would be some attraction for children to play upon. If the child has mental capacity to discern the obvious danger of falling off, an attractive object would not be an attractive nuisance to that child in the legal sense. The playground equipment in every park includes some types of platforms, whirligigs and both stationary and movable contraptions much more dangerous than the level bottom of the tank in its upside down position. The evidence shows the tank was made of metal and, therefore, we can assume it had considerable weight which gave it as much solidity, firmness and safety as a porch except it was not as large, and certainly as safe as most any playground contrivance. This young girl said she knew that she could be hurt if she fell off this tank. Having the ability to know and realize this obvious danger places her well in the category of a person who is capable of committing acts that bar recovery for injuries resulting from her own negligence, and prevent the tank from being classified as an attractive nuisance, so far as she is concerned.
The evidence is very brief. There were only two witnesses, the father and the daughter. The father, after describing the environs of the location, said the tank had been on the lot about two weeks; that he had seen children playing on the tank; that he had warned all of his children not to play on the tank; that he and his wife had told his said minor daughter that she should not play on it. The father identified the school record of his daughter, showing that she was in the sixth grade, with high marks, and he said that sometimes she was on the honor roll and sometimes she was not. The school record shows that in the six years she had been in school, all her grades in every subject were A's and B's, except only four C's in the second grade. That Mary Margaret Juhas is a bright, intelligent girl is beyond question. The only significance *679 of that particular evidence is to demonstrate her ability to understand the danger of her actions on the occasion in question; and to show that she is legally responsible for the consequences of her own negligence.
Mary Margaret Juhas said that on that occasion she and four other children were playing on and around the tank; that "Well, I was on the tank and then E. P. wanted to get on, so I didn't want him to get on, so he got on and we were pushing each other and I fell off." She testified further that her mother and father had told her not to play on the tank; that she realized that she could fall off and hurt herself, but she didn't think about that on that day.
In the light of this evidence, there is not the slightest doubt that it was the grossest kind of negligence of this eleven year old girl of excellent intelligence to engage in a pushing contest with a thirteen year old boy on the three by eight foot level surface five feet above the ground. The fact that she did not think about the previous warning of her parents nor the danger which was obvious and well understood by her is no excuse. At her age and state of intelligence her forgetful oversight must be held to contribute to the gravity of her negligence, rather than to relieve her of its consequences. In such cases involving children the age of the child is not the sole test. The mental capacity to exercise judgment in a given situation must be considered, depending somewhat upon the type of activity engaged in. In this case, Mary's high degree of intelligence, coupled with the very obvious danger presented by the narrow area and its height, and all the other evidential facts, lead us to the conclusion that the judgment should be reversed.
The jurisprudence in this state in respect to the capacity of a ten to twelve year old child to appreciate and realize obvious danger in connection with non-technical and ordinary objects and situations is found in the following cases: Cronan v. Crescent City R. Co., 49 La.Ann. 65, 21 So. 163; Lynch v. Knoop, 118 La. 611, 43 So. 252, 8 L.R.A., N.S., 480; Downey v. Baton Rouge Electric & Gas Co., 122 La. 481, 47 So. 837; Cusimano v. City of New Orleans, 123 La. 565, 49 So. 195; Ferrand v. W. H. Cook & Co., 146 La. 17, 83 So. 362; Hargus v. New Orleans Public Service, Inc., 9 La.App. 117, 118 So. 847.
The case most strongly relied on by counsel for plaintiff is Plauche v. Consolidated Companies, 235 La. 692, 105 So.2d 269, were a twelve year old boy was held not to be guilty of contributory negligence in riding a horse across a traffic bridge. In that case his parents had warned him not to ride the horse but to lead him across the bridge, but the Court held that there was nothing inherently dangerous in riding the horse across the bridge, which the boy had done on other occasions without mishap. The injury to the boy resulted when a motor truck put on its air brakes in meeting the boy on the horse and the release of the brakes as the truck passed made a hissing noise which frightened the horse. The Court said that the boy was old enough to exercise judgment in ordinary situations, but the danger there developed was not so inherent that he could have been expected to realize or anticipate it. It is doubtful that an adult would have taken into consideration the possibility of a truck emitting such noise by releasing air brakes to result in a scared horse and an injured person. The situation is quite different in the case at bar. The danger of falling off the tank and possibility of injury was obvious and Mary Margaret Juhas acknowledged that she was well aware of that possibility.
For the reasons, the judgment of the District Court is reversed and plaintiffs' suit is dismissed, with costs in both courts to be paid by the plaintiffs.
Reversed.