JOHNSON, Judge.
This appeal was lodged in this court by Mrs. Mary Elizabeth White and Howard C. White, plaintiffs, who brought this action against The Employers Liability Assurance Corporation, Ltd., and Phoenix of Hartford Insurance Company, and Nathaniel B. Knight, Jr., defendants, for damages which resulted by the death of their minor son, Jimmie Carl White, who died from injuries suffered in an automobile accident. After trial of the case on the merits, the Twenty-Fourth Judicial District Court rendered judgment in favor of defendants. Phoenix of Hartford Insurance Company had been dismissed from the case prior to trial.
The principal undisputed facts of the case according to the pleadings and the evidence are that plaintiffs resided with their six children on Alliance Avenue between Jefferson Highway and the Mississippi River in the City of Kenner, Louisiana. On the night of February 2, 1965, about 6:30 p. m., the plaintiffs sent their 13-year-old son, Larry White, on his bicycle to Skippy’s Grocery Store and Bar to get cigarettes and bread for the parents. The plaintiffs gave permission for their younger son, Jimmie (born December 21, 1956), to accompany Larry on his sister’s (girl type) bicycle. Skippy’s store was located on the north side of the Airline Highway at Lesan Drive. In that area the Airline Highway runs generally east and west and Lesan Drive and Alliance Avenue run generally north and south. Lesan Drive is quite some distance west of Alliance Avenue. Lesan Drive enters the Airline Highway from the north but does not continue south across it. Alliance Avenue intersects Airline Highway about a half mile west of the overpass. The overpass referred to is on Airline Highway a short distance west of New Orleans International Airport (Moisant Field). To reach Skippy’s from their home the boys traveled north on Alliance Avenue, across Jefferson Highway (the old River Road) and continued to and across Airline Highway where they went west to Skippy’s store. The whole area involved is in the corporate limits of Kenner. The boys arrived at Skippy’s, made their purchases and started on the return trip to their home. When they came out of the store, Larry rode south across the Airline Highway and turned east on the south shoulder or on the south side of the highway, while Jimmie turned east *582 along the north side or the north shoulder of the highway. Jimmie turned toward the south to cross the Airline Highway at the first break or opening in the neutral ground. This crossing through the neutral ground is 61 feet long and starts about 400 feet or more from Lesan Drive. Jimmie crossed the west bound traffic lanes of the Airline and as his bicycle entered the left east bound traffic lane, or momentarily after such entrance, the front wheel of his bicycle was struck by the left end of the front bumper of Mr. Knight’s Chevrolet Impala automobile traveling east in the left lane of the Airline Highway. Jimmie was thrown into the left side of the car, breaking the windshield at its lower left corner. After the accident his bicycle was lying in the neutral ground and his body was on the pavement in the left lane near the south neutral ground curb a few feet east of the point of impact. It was a dark, cold night and Jimmie’s clothes included blue jean trousers and two dark colored jackets. The Airline Highway in that area had been under construction at some recent time. New pavement of all four lanes and curbing along the sides of the highway and at the neutral ground had been completed but the filling and paving of the shoulders and neutral ground had not been done. The neutral ground was seven feet wide along the center of the highway. There were two traffic lanes on each side of the neutral ground, the south side lanes for traffic going east toward New Orleans and the north side lanes for traffic going west toward Baton Rouge. From about the point of collision there were 20 feet of tire skid marks which angled somewhat to the south side of the highway followed by a space of 100 feet without skid marks, at the end of which space skid marks again appeared for 20 feet ending at the left front wheel of the automobile against the south curb of the neutral ground, about 140 feet east of the point of impact. The wheel base of the automobile was one inch less that 10 feet.
Larry White testified that coming out of the store and crossing the Airline Highway as he rode east along the south side of the highway he could see his brother Jimmie, riding east on the north side, by the lights from vehicles going west toward Baton Rouge. When there was no traffic going west Jimmie turned to cross the Airline. Before Jimmie got to the neutral ground Larry said he saw lights of a car behind him going to New Orleans and he hollered to Jimmie to stop; that when Jimmie stopped with both feet on the ground he could see Jimmie plain because the car lights were on him; that when he told Jimmie to stop the Knight car was about even with Larry; that a big truck was behind the car; that other cars were behind the truck; that Jimmie was stopped with both feet on the ground when the car hit the bicycle. He said the car slid sideways and then “fishtailed” down the highway, with the stop or brake lights on all the way. Larry did not see the car actually strike Jimmie. He just saw a bunch of sparks. Larry said he knows Jimmie was stopped when he was hit. He saw him stop before the car got there. When Jimmie stopped with both feet on the ground his bike was inside the neutral ground lines. At one point Larry said the car was coming at a normal speed. At another he said it was going pretty fast. Notwithstanding Larry’s testimony, we are of the opinion from all of the evidence on the subject, that the car was traveling about 30 miles per hour.
Counsel for defendants argues, with some merit, that Larry’s testimony should be completely disregarded. Larry’s testimony does contain some contradictions on various points, particularly when his discovery deposition taken between the time of the accident and the trial of the case is compared with the testimony at the trial. However, we take into consideration that Larry was a child with no greater understanding and experience in life and no more capacity for recollection or wilful design than his age of 13 years would indicate. We can give some weight to some of his assertions which we believe can be accorded some degree of plausibility and credit without *583 applying the adage falsus in -uno, falsus in omnibus.
Mr. Knight gave a deposition in April, 1966. The trial in the district court was in May, 1967. Considering all of his testimony, we find that Mr. Knight was coming from Baton Rouge to New Orleans in a Chevrolet Impala automobile alone. He had been traveling between Baton Rouge and New Orleans almost every week for a long time. On the open highway he had been driving about 60 miles per hour but he said, as was his custom, when he reached somewhere near the city limits of Kenner he slowed down because from his experience he knew that the traffic began to build up in that area. It was dark and he did not look at his speedometer but he thinks he was traveling about 30 miles per hour when the accident happened. As he approached this point he saw nothing of an unusual nature, no signals or blinking lights, no signs or barricades, in indication that construction was underway there. He was driving with city driving headlights but not the high, bright headlights. There was no traffic near him at that time. His car was the only one on that side, of the road and there was none coming on the other side. He said that he did not see the boy on the bicycle until the boy came from his left into his headlights and he struck the boy almost simultaneously. He did not see him long enough to be able to tell definitely whether the boy was moving or not. His impression was that the boy was moving across his path. He said some portion of the bicycle had to be in the highway.
Mr. Knight testified further that when he saw the boy he applied his brakes immediately and his car swerved to the right. The car was about to go off the road and to prevent losing control of it he let up on his brakes and turned quickly to his left. As soon as the car straightened out and came under control he again applied his brakes. The car stopped in the left lane headed at an angle to the neutral ground curb.
William F. Neel, a neighbor and friend of plaintiffs, heard about the accident and drove the plaintiffs in his car to the scene, arriving in a few minutes after the accident. He and Mr. White testified that there were quite a number of blinking yellow and orange caution lights along the neutral ground in both directions and also one sign which said “Slow under Construction.”
Henry A. Saacks was project engineer of the Louisiana Highway Department, whose supervision included the stretch of the Airline Highway from the Spillway to Kenner. T. L. James Company had the contract to resurface that stretch and the whole job was completed April 7, 1965. He said he was on the job every day when construction was underway. During the time work was being done they had warning signs and lights at all points. He could not say of his own knowledge that there were any lights in that area at that time.
In this connection we note that the actual pavement of the traffic lanes and curbs had been completed and all that remained to be done was to fill in the neutral ground and pave the shoulders. Therefore, it would appear that the work which would make necessary warning signs and lights had been completed.
Sergeant John J. Bucolla, of the State Police, arrived at the scene of the accident just as the ambulance was removing Jimmie White to the hospital. The officer testified that he determined the point of impact to be three feet from the neutral ground in the traveled portion of the left traffic lane going east. He said after the accident Jimmie was lying on the pavement in the left lane about six feet east of the end of the break in the neutral ground. He found blood on the pavement right next to the neutral ground curb. The bicycle was in the neutral ground about six feet east of the point of impact. He said it was extremely dark; that there was no construction under way in that area; no construction lights, no flares and no barricades. The traffic lanes were open on both sides of the highway. He ex *584 plained that the skid marks started right at the point of impact, veered to the right for 20 feet then there were no marks for 100 feet when heavy skid marks reappeared in the right lane veering to the neutral ground for 20 feet. The skid marks ended at the left front wheel of the Knight car which was right up against the neutral ground. The car was there when Sergeant Buceóla made his measurement. He said the front of the car was 140 feet from the point of impact with a total of 40 feet of skid marks in two separate sections of 20 feet each. There was a fresh tire mark from the bicycle on the chrome bumper of the car. Sergeant Buceóla further testified that he talked to Larry White at the hospital that night and that Larry did not tell him at any time that his brother stopped the bicycle and got off before the impact; that Larry did say that he saw the car pass and he yelled to his brother to stop but apparently the brother did not hear him. He said the speed limit at that place at that time was 30 miles per hour and that he knew there were no yellow, blinking lights there at that time.
John F. Exnicios testified for the defendants. He occupied the position of traffic engineer for the City of New Orleans. He recited his educational and professional qualifications and experience which qualified him to testify as an expert. He explained that in order to determine the true distance a car skids, if all four wheels are locked, there must be deducted from the total length of the skid the wheel base of the car. The car involved here had a wheel base of 119 inches. There being two separate lengths of skid marks of 20 feet each, from that measurement must be deducted about 10 feet from each separate skid mark, which leaves a total distance of 20 feet the car actually skidded. He said that under all circumstances of this case, the type of pavement, etc., the car was going less than 30 miles per hour.
There is reference in the testimony to the firm of T. L. James, a well-known contractor, having performed the road work along this route. Counsel for defendants calls attention to the fact, and we think it is of significance, that no representative of the contractor was called to support the testimony of some of the witnesses for plaintiffs'with regard to the road condition and warning lights. Counsel for defendants says in his brief that three employees of the contractor were summoned by counsel for plaintiffs and personal service was made of the subpoenas. The record contains these subpoenas showing such service. These witnesses were not called to testify. Ordinarily we would say that such witnesses were as available to defendants as to plaintiffs and would make no point on the absence of their testimony. However, we believe that if they were summoned by one attorney the other attorney had the right to expect them to be called by the attorney who had them summoned and if any presumption arises from the fact that such witnesses were not called, such presumption is chargeable against the attorney who summoned the witnesses. We think the situation here is sufficient to give rise to the presumption that the testimony of these three James’ witnesses would not have been of assistance to plaintiffs’ contention.
We are convinced that Jimmie White was riding his bicycle on this dark night without any kind of light or reflector on the bicycle; that his clothing was dark of color and this would create no reflection from the lights of the automobile with the new black pavement as a background. We have considered all the testimony and exhibits and find no error in the exercise of the discretion of the trial court on the question of liability. We hold that Mr. Knight’s failure to have seen the boy soon enough to avoid the accident was not due to any negligence on his part. Lawrence v. Core, La.App., 132 So.2d 82; Gross v. Zeringue, La.App., 58 So.2d 294.
Finding no negligence on the part of defendant Knight, it is not necessary to discuss at length the question raised by the plea of contributory negligence on the part of the eight-year-old Jimmie White.
*585 Mr. White testified that Jimmie’s grades in school were “F” but Mrs. White said that Jimmie made “B” and “C” grades in school and that he minded her better than the other children, all of which indicates a boy of reasonable intelligence. Whether he was stopped or moving forward he did place himself suddenly in the path of the car and this act was definitely negligence which was a proximate cause of the unfortunate accident. Lynch v. Knoop, 118 La. 611, 43 So. 252; Downey v. Baton Rouge Electric & Gas Co., 122 La. 481, 47 So. 837; Jenkins v. Firemen’s Insurance Co. of Newark, N. J., La.App., 83 So.2d 494.
We note in the judgment that the trial court decreed that the parties pay their own costs. Under the authority of LSA-C.C. P. art. 2164, the judgment should be amended to decree that the plaintiffs shall pay all costs of this proceeding.
For these reasons it is ordered, adjudged and decreed that the judgment of the trial court appealed from be amended to cast the plaintiffs with all costs of this proceeding, and, as amended, the judgment is otherwise affirmed, with'all costs to be paid by plaintiffs.
Amended and affirmed.