The verdict of the jury and the sentence are therefore affirmed.

O'NIELL, C. J., dissents from the ruling on bill No. 5.

## LINXWILER et al. v. CITY OF SHREVEPORT et al.[*]

### No. 4628.

Court of Appeal of Louisiana. Second Circuit.

Dec. 1, 1933.

---

[*]Rehearing denied January 3, 1934.

Aubrey M. Pyburn and Blanchard, Goldstein, Walker & O'Quin, all of Shreveport, for appellants.

Isaac Abramson, of Shreveport, for appellees.

TALIAFERRO, Judge.

Plaintiff Mrs. W. H. Linxwiler, while walking across the alley that severs the sidewalk on the east side of Louisiana avenue in the city of Shreveport, slipped on a metal valve box or manhole cover, lost her balance, and fell to the pavement. She received some severe and painful injuries as a result of the fall. She sues the city of Shreveport, Southwestern Gas & Electric Company, and Southern Cities Distributing Company to recover damages for her injuries. Her husband joins in the suit, and sues to recover the physicians' and other bills incurred in treating Mrs. Linxwiler.

The valve box was constructed by the Southwestern Gas & Electric Company in 1925, and contains equipment needful in the distribution of gas, and is a part of the system that serves gas to the people of the city of Shreveport. This system for gas distribution was acquired by the Southern Cities Distributing Company from the Southwestern Gas & Electric Company in 1928. These two companies were made defendants on account of certain agreements and obligations on the part of their grantors, and by them assumed, in the franchise granted by the city of Shreveport.

The gravamen of plaintiffs' charge of negligence against defendants is covered mainly by articles 14 and 15 of their petition, which we quote:

"That the said defendants herein were negligent in using such an unsafe manhole cover which, due to its smooth, slippery surface, its unsafe approach and its color, and due to its lack of rail, guard, barrier and lack of protection was inherently dangerous to the life and limb of people traveling along this thoroughfare.

"That the City of Shreveport was negligent in permitting the above referred to defective condition of its street to remain in such a defective condition, so that it is responsible to your petitioner for the damage which she has sustained. That it was absolutely negligent on the part of the said City of Shreveport to permit a traveled thoroughfare to remain in the defective and dangerous condition as above described."

It is also alleged that the said "defect was open and manifest and plainly to be seen," and that defendants had notice thereof prior to plaintiff's injury, as other persons had been similarly injured at the same place and from the same cause. Narrowed down, the specific negligence charged to defendants and relied upon by plaintiffs to recover is that the manhole cover was smooth, and became very slippery when rained on; that its top surface should have been rough or corrugated.

Defendants all deny generally the allegations of plaintiffs' petition. The Southern Cities Distributing Company admits exclusive ownership of the valve box. The city of Shreveport called its codefendants in warranty, and prayed for judgment against them, should it be cast for any amount. Each defendant specially disclaims any negligence on its part, and avers that Mrs. Linxwiler's injuries were caused solely by her own inattention, lack of care, and negligence in the manner in which she walked along the street when injured. Contributory negligence on her part is specially pleaded, should it be found and held that defendants, or any of them, were negligent to any extent.

The case was tried before a jury. There was judgment in favor of plaintiffs and against all defendants in solido for different amounts, and judgment for like amounts in favor of the city of Shreveport and against its codefendants on the calls in warranty. All defendants have appealed. Plaintiffs have answered the appeals, asking for substantial increase in the judgments appealed from.

We find it unnecessary to go into the details of the calls in warranty which the city made on its codefendants; nor to state the basis of its contention that they should be condemned in warranty for any judgment

rendered against it herein on account of negligence in the construction or maintenance of the valve box in question, which is not, nor has it ever been, the property of the city.

■ We do not think defendants responsible to plaintiffs for the accidental fall and resulting injury to Mrs. Linxwiler. She has lived for thirteen years not more than six blocks south of the spot where she was injured. During this time she often walked up the east side of Louisiana avenue to the business section of the city, and returned home by the same route. She must be held to a definite and accurate knowledge of all longstanding conditions in the streets and sidewalks of the route over which she traveled so frequently. In her petition she solemnly avers that the defective condition of and about the manhole was "plainly to be seen." It therefore follows that she either observed the conditions of which she complains, or else, without good excuse, failed to see that which she says was plainly to be seen.

The alley where plaintiff fell bisects the block that faces Milam street on the north, Crockett street on the south, and Louisiana avenue on the west. It is about fifteen feet wide, and is surfaced with Uvalde Rock asphalt on a brick base. From the curb on Louisiana avenue, it declines gradually eastward toward the property line. On either side the sidewalk is from six to eight inches above it. The Strand Theatre, the largest and most generally attended in the city, faces Crockett street and the avenue, extending back northerly to the alley. The manhole, or valve box, is near the corner of the theatre building. North of the alley a few feet there is a flight of steps that leads from the sidewalk into a bicycle shop below the sidewalk's level. The west side of the opening in the walk, necessitated by these steps, is protected by a guard rail, four or five feet from the wall of the building on the property line. It runs with the sidewalk. A line projected south from this guard rail will cross the west edge of the manhole cover, leaving more than three-fourths of it on the east side of such a line. The manhole cover is approximately 2½ feet square, and is seated in a cement frame of light color. This frame is some four or five inches wide, and is slightly higher than the asphalt surfacing surrounding it. On account of its lighter color, it stands out in contrast with the metal cover and the adjacent dark surfacing.

When plaintiff was injured, she was returning home from a picture show on Milam street. She says that when she stepped from the sidewalk to the alley it was raining, and she walked obliquely toward the wall of the Strand building to protect her hat and clothing from the rain. In taking this course she necessarily had to cross the cover of the valve box. Had she continued in the course she had followed before reaching the alley, it is only barely possible that she would have touched the cover at all. Notwithstanding the allegations of her petition to the effect that the manhole cover was at all times plainly to be seen, in her testimony she states that she did not know it was there, and did not see it before she slipped and fell.

It is shown that manhole covers of the kind as that on which plaintiff fell are generally used by gas and electric companies in municipalities and by municipalities themselves, and that there are many of them now in use in the city of Shreveport, while covers with corrugated surfaces are also used by some public utilities. Either kind meets the requirements of the city of Shreveport, and are accepted as a compliance with franchise provisions designed to protect and insure safety of street traffic.

Pedestrian traffic on Louisiana avenue from Crockett street to Milam street is very heavy, especially at night, due to the presence of the Strand Theatre there. Several policemen of the city, whose beats over a period of several years included the theatre and Louisiana avenue from Crockett street to Milam street, testified that plaintiff's fall and injury at this manhole was the only one of which they had knowledge. A check of the traffic on the sidewalk between these two streets, from noon to 4 p. m., on a rainy day in April, 1933, showed the following: From Crockett to Milam, 377 passed; 71 stepped on the manhole cover. From Milam to Crockett, 444 passed; 30 stepped on the manhole cover. None slipped or fell on the cover.

No complaint of the alleged defective or dangerous condition of the manhole cover reached the authorities of the city until plaintiff's case arose. Thereafter, an investigation of it was made by the city, and, finding the construction of the hole and the character of the cover as being proper and free from hazard to traffic, no change therein was suggested or made.

■ Our discussion of the case is in the main confined to the question of the city's liability to plaintiff. If there is no liability by the city, then there can be none on the part of the other defendants. The alley wherein the manhole is located is a part of a city thoroughfare over which there is constant, heavy, pedestrian traffic. It is the duty of the city to take care that all of its streets and sidewalks be maintained in such condition that those using them, by the exercise of due care and precaution, will not suffer injury by falling thereon. In this connection, however, we might add that the city is not an insurer of the safety of all who use the streets. Its duty embraces only the keeping of its streets and sidewalks in reasonably safe condition, so that those exercising ordinary care may

avert the dangers to which they otherwise might become victims.

In Goodwyn v. City of Shreveport, 134 La. 820, 64 So. 762, 763, it was held: "The duty of municipal corporations is to see that their sidewalks are in reasonably safe condition for persons exercising ordinary care and prudence."

To the same effect is Suthon v. City of Houma (La. App.) 146 So. 515.

■ It is well established by the jurisprudence of the state that even where there exists defects of a dangerous character in a sidewalk the city cannot be held responsible for damages caused thereby, unless it had actual or constructive notice of such hazardous conditions.

In Wiltz v. City of New Orleans, 2 La. App. 444, it is held: "But that responsibility exists only when the defective condition is dangerous or calculated to do injury, and when the city had actual or constructive knowledge of the defective condition."

Many cases on the point are cited in this decision, including Collins v. Lyons, 9 La. App. 737, 120 So. 418, and James v. City of New Orleans (La. App.) 121 So. 879.

In the present case, even if it be assumed that the smooth valve box cover, when dampened by rain, served as a hazard to persons walking over the alleyway there, its dangerous or unsafe condition was wholly unknown to the city. The fact that the cover had been there for over six years prior to plaintiff's accident, and that no one had been injured from falling thereon before her case, should, and does, serve as convincing proof that the valve box and its cover were not the inherent dangers to traffic that they are painted by plaintiffs. And from these facts the city could properly make the deduction, and may safely conclude, that this character of cover used by its codefendants over the holes made in its streets and sidewalks in the exercise of their franchise rights meets all legal requirements and furnishes that degree of safety to traffic required by law and the covenants of the contract granting the franchise; and, as stated in brief by one of defendants: "Proof that hundreds of persons daily for weeks prior to and after the accident passed without mishap over that particular spot is conclusive proof that the street or sidewalk is reasonably safe and plaintiff cannot recover." Millstead v. City of New Orleans (La. App.) 146 So. 492, 493.

■■ Plaintiff was evidently watching her step when she stepped from the sidewalk to the alley below, some six or eight inches. The most natural thing for her to have done then, while she was looking downward, was to survey the situation before her, and, in doing this, the valve box and its cover must have been seen by her, and in the exercise of that care and prudence required by law she would have seen it; a fortiori should she have seen them if their dangerous condition were manifest, as alleged in her petition. If, as she alleges, the situation there was so obviously dangerous, it was her plain duty to have avoided stepping on the cover, thereby, impliedly, inviting injury to herself. Be this as it may, we conclude that the manhole cover was not per se a danger to traffic, and the accident suffered by plaintiff could as well have happened to her or any one else on a rainy day on any sidewalk or street of the city. It is shown that the asphalt around the valve box itself becomes very slippery when a light rain falls, and this sort of surfacing is generally used by the city on its streets and alleys.

It has been held that: "Pedestrian tripping over obsolete gas box protruding two inches above defective brick sidewalk near home in sufficiently lighted street held contributorily negligent." Moise v. New Orleans Public Service, Inc., 19 La. App. 703, 140 So. 505.

In that case, the locus of the danger was well known to plaintiff, as in the present case.

Viewing the case from the position plaintiff has taken, the case of Barnes v. City of New Orleans, 4 La. App. 503, is peculiarly applicable. We quote the syllabus of the case:

"The duty of municipal corporations is only to see that its sidewalks are reasonably safe for persons exercising ordinary care and prudence.

"A person who has passed over a sidewalk daily for several years and is acquainted with its bad condition cannot recover damages against the city if, at 8:40 in the morning, she stumbles and falls, owing to the defective condition of the sidewalk." Also Moise v. New Orleans Public Service, Inc., supra.

Plaintiffs' counsel cite many cases from our own jurisprudence in support of their contention that liability lies against defendants for allowing the valve box to be and remain covered by a metal cover with smooth surface, but we do not think any of these cases in point. Many of the cases involved defects in sidewalks or streets, which, from their nature, were "traps" to a pedestrian, not capable of detection by the exercise of ordinary care and caution, while others involve accidents which happened at night at points inadequately lighted.

In the present case, the accident happened near 3 o'clock in the afternoon, when visibility was very little affected by weather conditions.

■■ We think defendants free from negligence in connection with the valve box and its cover, and that plaintiff's injuries are traceable to her own lack of care and attention while crossing the alley. On the other hand, should it be held that defendants were negligent, it certainly is established that Mrs. Linxwiler contributed to her accident to the extent that her right to recover is barred thereby.

The verdict of the jury and the judgment based thereon are hereby set aside, annulled, and reversed; and plaintiffs' suit is dismissed at their costs.