43 So.2d 621 (1950)
MASSICOT
v.
CITY OF NEW ORLEANS.
No. 19212.
Court of Appeal of Louisiana, Orleans.
January 3, 1950.
R. A. Dowling and Anna Andollina, New Orleans, for plaintiff and appellant.
Henry B. Curtis, City Attorney, and Alvin J. Liska, Assistant City Attorney, New Orleans, for defendant and appellee.
McBRIDE, Judge.
Plaintiff, Percy Massicot, has appealed from a judgment dismissing his suit against the City of New Orleans for damages in the sum of $7500, for injuries sustained by him as a result of a fall at the intersection of Dauphine and St. Philip Streets. His original and supplemental petitions allege that on the night of January 30, 1946, at about 9:30 o'clock, while he was attempting to cross the street, walking from the sidewalk to the street, he "struck and caught his foot under a steel rod which had left the curbing and was protruding about 2 inches above the sidewalk. That this steel rod is used (in) binding the curbing at the edge of the sidewalk and had become partially detached from the same;" that "the steel rod was exposed for a space of about two or more inches above the broken piece of concrete;" that he was thrown forward and sustained severe injuries.
In the answer, the City of New Orleans denied plaintiff's allegations. Alternatively it pleaded contributory negligence on the part of plaintiff, charging among other things that plaintiff failed to exercise a proper lookout and reasonable care and prudence.
In the very recent case of White v. City of Alexandria, ___ La. ___, 43 So.2d 618, the Court, after citing numerous cases involving sidewalk accidents, said:
"* * * Thus, a municipality * * must keep the sidewalks reasonably safe, but the maintaining of them in perfect condition is not necessary. To render it liable in damages the defect complained of must be dangerous or calculated to cause injury. Defects in sidewalks that are not in the nature of traps, or from which danger *622 cannot reasonably be anticipated, provide no actionable negligence. * * *
"For determining what is a dangerous defect in a sidewalk (that which renders the municipality responsible in damages to a pedestrian injured as a consequence thereof) there is no fixed rule; the facts and surrounding circumstances of each particular case control. The test usually applied, however, requires an answer to the question of whether or not the walk was maintained in a reasonably safe condition for persons exercising ordinary care and prudence."
According to Massicot's testimony, he entered Johnny's Bar, located at Dauphine and St. Philip Streets, at 7:00 o'clock on the night of the accident; he drank no alcoholic beverages but confined himself to several soft drinks. He left the place at 10:00 p. m., walked across the paved sidewalk, and just before stepping into the street stumbled and fell. He stated that the sidewalk was broken in such a way that there was a hole between the pavement and the steel rim of the curbing, and that his foot caught in the hole under the steel rim.
He produced three witnesses, who were at the time riding in an automobile which had just about reached the corner. Gardner, on his direct examination, testified that when he saw Massicot fall he alighted from the automobile and picked him up in the middle of the street. This witness made no mention of the steel rim of the curb, and attributed Massicot's fall to "a crevice where the curbing is broken loose from the sidewalk. He apparently caught his foot in that and fell out into the street."
Mrs. Eloise Childs said that the paving was "all busted up * * * the concrete was all broken loose from that black piece of iron. The man stepping in there is what caused him to stumble over." This witness noticed a hole in the pavement into which she thought Massicot stepped when he fell.
Myrtle Magee testified that the pavement was "all busted up." When asked "Did he fall after he got off of the sidewalk, or when he got near the edge of the sidewalk, or where did he fall?" she replied, "I couldn't say just where." She noticed a hole at the steel curb rim a little longer than her foot and about one and one-half or two inches deep.
Although Mrs. Childs and Miss Magee were emphatic that the concrete was broken away from the steel rim, Gardner nowhere alluded to that fact. On cross examination he stated that "this section of the pavement was entirely broken loose, leaving a cavity of three or four inches. It was completely broken loose from the sidewalk" and there remained "a space in between the sidewalk proper and the curb."
On the basis of this evidence, we find it impossible to determine exactly the nature of the defect in the sidewalk of which plaintiff makes complaint. While the petition alleges that he caught his foot under a steel rod which had parted from the curbing, and which protruded about two inches above the sidewalk, none of the testimony bears out that allegation. Gardner's testimony does not coincide with the statements of the two women and Massicot.
To add to the confusion, under questioning by the judge, Massicot testified on cross examination:
"Q. Maybe I can clarify it from your pleadings. At any rate, the whole steel rim was not broken in half and sticking out? A. No, sir; this piece was broken away from the sidewalk.
"Q. Actually what you mean is that the concrete broke away from the steel? A. The steel stopped right about here. This piece was broken in such a way that this part could go backwards and forwards. It was at this piece that the concrete was taken out."
Several photographs of the locus in quo, taken about eighteen months after the accident, were offered in evidence, and our examination of them fails to reveal any defect in the sidewalk or curb such as was described by plaintiff and his witnesses. There appears to be a narrow crack between the paving and the curbing, but we cannot believe that this slight defect would be sufficient to cause a prudent pedestrian to trip and fall.
*623 Plaintiff produced testimony in an attempt to show that the sidewalk was repaired by the city after the accident and before the pictures were made, and counsel argue that the pictures, which do not reflect true conditions, cannot usefully serve or be of possible benefit to defendant.
There is some testimony in the record to the effect that the defective condition of the sidewalk had existed for a period of about eight months prior to Massicot's fall. However, John Quartano, a Field Inspector for the City of New Orleans, whose duty is to receive complaints regarding damaged sidewalks, testified that no complaint was ever made to him or to his office until April 12, 1947, when a memorandum from the City Attorney's office was placed on his desk notifying him that someone had fallen at the corner of St. Philip and Dauphine Streets, and directing that an inspection of the sidewalk be made. Thomas Nestor was sent out and made the inspection. On May 22, 1947, the City Engineer ordered a thorough investigation of the particular spot. Quartano, who has had ten years experience in sidewalk repairing, personally made the inspection on May 28, and found that sidewalk in good condition. He identified the photographs and stated that they reflected the same conditions that existed at the time of his investigation, and his opinion was that the slight crack shown in the pictures had existed for five or ten years and resulted from deterioration, which indicated to him that that portion of the sidewalk had never been repaired from the time it was laid. The pictures also show that the curb, at the spot where Massicot claims he fell, which he designated on one of them as being between points marked A and B, is cracked where it meets the street level. Quartano stated that this demonstrates that no repairs had been made to the curb, as this cracking likewise resulted from deterioration over a period of years. The witness explained that if new concrete had been placed in the area it would be easily distinguishable, because new concrete shows up lighter than old. From our careful inspection of the pictures, the concrete appears to be old and worn and of uniform color; however, there is what appears to be a new surface on the curbing of St. Philip Street, but not at the corner in the area in which plaintiff claims he tripped and fell. Quartano stated that this denotes that the curbing on St. Philip Street had been repaired, but that no work had been done on the curbing at the corner between points A and B.
Thomas Nestor testified that his inspection, which was made in April, 1947, failed to disclose anything wrong with the sidewalk. He went into Johnny's Bar, and Massicot, who was there, took him outside and pointed out the exact spot where he had fallen. Nestor examined the area and could discern no defect, as the hole had been "fixed." On cross examination Nestor stated that he was able to see where repairs had been made.
A study of the record as a whole leads us to the conclusion that no defect existed in the sidewalk or curbing which could have proximately caused the accident. Though the trial judge gave no written reasons for judgment, it is evident that he entertained the same view, for the transcription of Quartano's testimony discloses that he examined the witness with reference to repairs, and particularly whether repairs, if made, would have been visible, apparent, and discernible. Our conclusion is that plaintiff has unsuccessfully carried the burden of proving that the city failed or neglected to keep the sidewalk reasonably safe for pedestrians.
A municipality is not the insurer of the safety of pedestrians; White v. City of Alexandria, supra; Linxwiler, et al. v. City of Shreveport, La.App., 151 So. 81; Collins v. Lyons, 9 La.App. 736, 120 So. 418; James v. City of New Orleans, La.App., 121 So. 879. The bare fact that the plaintiff fell does not warrant a recovery of damages.
Even assuming, arguendo, that the sidewalk possessed defects sufficient to have caused the accident, and that defendant had constructive knowledge thereof, a recovery would nonetheless be denied plaintiff because it abundantly appears that he was guilty of negligence which contributed to his fall. A pedestrian may assume that *624 the sidewalk is reasonably safe, and need not keep his eyes constantly focused upon it, but he must see those defects which are obvious and apparent and which would be noticed by a reasonably and ordinarily prudent passerby. White v. City of Alexandria, supra; Ansley v. City of New Orleans, La.App., 168 So. 343.
The sidewalk was well lighted. Quartano visited the scene of the accident on the night preceding the date of the trial below, and perceived a city light standard which projects through the gallery above the saloon. He stated that the "gooseneck" at the top end of the light standard positions the light where it brightly illuminates the sidewalk. The testimony of Myrtle Magee, plaintiff's witness, on cross examination, bears out these statements of Quartano. She testified as follows:
"Q. Did you have occasion to look at the sidewalk in connection with this accident at the time of the accident. A. No. You could see it there.
"Q. Anybody could see it there? A. Yes, sure anybody could see it there.
"Q. It was night time at the time? A. Yes.
"Q. And you could just look at the sidewalk and see it? A. Sure, there is a light there.
"Q. It is a very bright intersection, isn't it? A. It isn't so bright, but it is bright enough to see.

* * * * * *
"Q. Anybody passing there can see it? A. Yes, they can see it.
"Q. And anybody passing at night can see it? A. Sure.
"Q. You have no doubt about that? A. No indeed, I don't. I guess I have two eyes and I can see."
Massicot left the saloon with the intention of boarding a bus. He looked to his rear, saw the bus approaching, and while looking backward started to walk "as fast as I could," then fell.
There is absolutely no reason why Massicot should not have noticed imperfections in the sidewalk had he been attentive. His own testimony conclusively shows that he walked forward at a rapid pace without keeping a lookout such as the law requires of a reasonable and prudent man.
The judgment appealed from is affirmed.
Affirmed.