McBRIDE, Judge.
Plaintiff originally brought this suit against the City of New Orleans claiming a large amount of damages for physical injuries sustained by him as a result of a fall in front of the premises 3427 Lowerline Street. The accident, which occurred about 6.o’clock a. m., on July 3, 1946, is alleged to have been caused by the defective and dangerous condition of the sidewalk. Birth was walking along the downtown sidewalk of Lowerline Street in the direction of Edinburg Street in the block between that street and Olive Street.
Plaintiff was the only witness who testified as to the happening of the accident. At the time of the accident he lived in Coolidge Court about one-half of a block from the situs of-his fall.
*234 The testimony does show that for many years the sidewalk immediately in front of 3427 Lowerline Street had been in a defective condition. Birth testified that on the morning of the accident he left his home and then turned into Lowerline Street, and upon reaching a point in front of the house bearing No. 3427, his left foot went into a hole in the paved sidewalk which caused him to throw his right foot forward in order to brace himself and the foot slipped causing him to fall backward. He claims he suffered severe and painful injuries as a result.
The offending hole or depression, semicircular in shape, was located at the edge of the paved strip nearest the street. It is conceded that since the accident the sidewalk has been repaired and the semicircular-shaped hole is now filled with concrete. This is clearly shown not only by the testimony but by photographs in the record.
There is a mass of testimony concerning the dimensions of the hole itself. As to the measurements, however, we think, these are shown by the testimony of Mr. Harry Herman, an attorney in this city who formerly represented Birth in this lawsuit. Mr. Herman states that he made an examination of the hole into which Birth claims he stepped and that he found it to be 14 inches by 8 inches and about 1-J4 inches deep. Other witnesses estimated the depth at S inches, 6 inches, 6 or 7 inches, 8-j4 inches, and one said the hole was “a little deep.” One stated that it was considerably deeper in 1944", but had become somewhat filled in by cinders over the years.
In his original petition, Birth alleged that the defect in the sidewalk constituted a trap and had existed for at least six months prior to the accident. He claimed the sum of $10,372, representing loss of wages and for physical injuries.
It might be well to mention that the suit was filed on June 16, 1947, and on November 18, 1952, approximately five years and five months after the suit had been instituted and more than six years after the accident, plaintiff, through other counsel, filed a supplemental and amended .petition alleging that the defective portion of the sidewalk which caused the accident resulted from the negligent removal of a utility pole belonging to the New Orleans Public Service, Inc., or the Southern Bell Telephone and Telegraph Company, or both, which left a break in the pavement; that the accident was solely and proximately caused through the joint and concurrent negligence of the Commissioner of Public Works for the City of New Orleans, New Orleans Public Service, Inc., and Southern Bell Telephone and Telegraph Company, their agents, servants, and employees, all of whom had knowledge of the defective condition of the sidewalk and were negligent in failing to fill the hole which had been made when the pole in front of the premises 3427 Lowerline Street was moved by the utility corporations.
The supplemental petition then sets forth that as a result of the accident Birth sustained injuries more serious in-nature than alleged in his original petition, and he claims of the original defendant and the two utility corporations the sum of $60,356, in solido.
The New Orleans Public Service, Inc., filed certain exceptions, one of which is the prescription of one year liberandi causa, which were referred to the merits of the case by the trial judge. All defendants answered the suit. The City of New Orleans denied all of plaintiff's allegations, and, in the alternative, set forth that Birth was guilty of contributory negligence which bars his recovery; it was further pleaded in the alternative that if there was any defect in the sidewalk, such resulted not from the actions of the City, but through the fault of the New Orleans Public Service, Inc., or the Southern Bell Telephone and Telegraph Company. ,
The answer of Southern Bell Telephone and Telegraph Company denied all allegations against it.
New Orleans Public Service, Inc., in substance denied all of the plaintiff’s allegations, and, in the alternative, alleged that plaintiff was guilty of contributory negli-. *235 gence in that he should have seen the hole and avoided it.
The matter went to trial on these issues and after an extended hearing, which produced a voluminous record, the trial judge, without ruling on the exceptions, dismissed the suit, and plaintiff has appealed from the judgment.
At this point it may be stated that counsel for plaintiff both in their brief filed in this court and in their oral argument concede that plaintiff has been unsuccessful in proving that the Southern Bell Telephone and Telegraph Company was in any way responsible for the accident and that as to this said defendant the plaintiff has abandoned his demand.
Counsel for New Orleans Public Service, Inc., strenuously reurge the exception of prescription of one year, but as the trial judge disposed of the case on its merits, we believe we should do likewise, as our views on the merits render it entirely unnecessary to discuss or pass upon the validity of the exceptions.
The theory upon which plaintiff seeks to recover from New Orleans Public Service, Inc., is that this defendant removed its line pole some time before the accident from a position partly on the paved sidewalk to nearer the street or about a foot or so away from its original site, which left a deep hole in the pavement which said defendant negligently failed to fill in. The plaintiff contends that the.butt of the line pole had been partly embedded in the pavement and partly in the grassy surface of the sidewalk, and that from the removal there resulted a semicircular and deep depression in the edge of the paved strip of sidewalk nearest the street.
Plaintiff produced three witnesses who testified that the line pole had at one time been partially embedded in the concrete but was moved nearer to the gutter prior to Birth’s accident. These witnesses say that this left a semicircular hole in the pavement. However, none could say exactly when the pole had been moved from its original position. Notwithstanding this testimony, we do not believe that the New Orleans Public Service, Inc., at any time changed the location of the pole or that said corporation had anything to do with any defect there may have been in the sidewalk.
This defendant called as a witness Mr. Adam Junker, Vice-President of the Security Building & Loan Association of New Orleans, who produced two photographs which he testified were made in 1935 and which have been in his custody ever since. According to Mr. Junker, these pictures were made by a commercial photographer, who is now deceased, in connection with the building and loan association’s acquisition and sale of the premises 3427-29 Low-erline Street and 3423-25 Lowerline Street in 1935, and the witness identified the pictures as being to his own knowledge photographs of the two double houses. The photographs not only show that the line pole in question was not located on or embedded in any part of the sidewalk in front of 3427 Lowerline Street in any manner, but that the pole occupied in 1935 the same position that it occupied at the time of the trial in the court below in 1953. No break in the sidewalk such as was described by plaintiff’s witnesses can be seen on the pictures. Mr. Junker said the property in question was repossessed by the building and loan association in February of 1935 and was subsequently sold to a Mrs. J. M. Ktrch-berg.
James M. Kirchberg testified that he acquired the property (although title was taken in his wife’s name) in September 1935 and remained in his ownership until March of 1949. Kirchberg identified the photographs produced by Mr. Junker as showing the premises as they were at the time of his purchase in 1935. He emphatically stated that the line pole was never embedded in any manner in the sidewalk either wholly or partially and further that the pole had never been moved and occupies at the present time the same position as it did in 1935.
The New Orleans Public Service, Inc., also offered the testimony of Joseph W. Prenger, its Senior Property Accountant, and Cliff R. Newlin, its present Junior Engineer in the Gas Department. Prenger’s *236 testimony deals with the fact that New Orleans Public Service, Inc., evaluated its assets in 1939 as did other electric utility companies in the United States in order to ascertain the value of the properties on a cost basis when first used for utility purposes; that in connection with the inventory it was necessary to list all poles and fixtures of the New'Orleans Public Service, Inc., and the circumstances under which they had been constructed in order that the cost thereof could be evaluated. The secondary maps used in connection with the inventory and especially the map dealing with the line pole in front of 3427 Lowerline Street were introduced into the record. In connection with the latter, there was also introduced into evidence the field sheets for the inventory.
Prenger testified that Newlin had charge of the inventory in the area of 3427 Lower-line Street and most of the entries on the inventory were made by Newlin and Line Pole No. 789, which was the number assigned to the pole in front of 3427 Lower-line Street, is reflected on the inventory sheet.
Newlin testified that he made the entries appearing -on the inventory, particularly on Sheet No. 40 of Map Section 17, which shows Line Pole No. 789 and its location, The inventory reflects that the pole was in fair condition and was classified as “F,” Newlin stated that no part of the pole was located in pavement or concrete, for had the pole been set- in pavement or concrete the letter- “P” would have appeared as the classification in the column which provides for the-disclosure of whether a pole is embedded in pavement.
R. E. Cary, a meter reader for the New Orleans Public Service, Inc., testified that he had been working the vicinity of 3427 -Lowerline Street approximately oncé ' a month since- 1929 and that he is familiar with the sidewalk in front of the said premises. Cary stated that the line pole in question occupies .the same position today as it occupied in 1929 and that it stood in the same position in July 1946.
Travis Emery, an employee of the New Orleans Public Service, Inc., for twenty-six years, testified that he has lived in the vicinity since 1930 and has had occasion to pass along the sidewalk in front of 3427 Lowerline Street two or three times every week. The witness stated he is familiar with the pole and that it stands about six or eight inches from the sidewalk and it was this same distance away from the sidewalk in 1930 and in 1946. Emery says he leaned against the pole on several occasions while in conversation with friends at the location.
The Southern Bell Telephone and Telegraph Company also produced witnesses regarding the question whether the pole had ever been moved. Charles R. Capde-pon and Bernard M. Levy, employees of the telephone company, the latter being Supervising Engineer of the New Orleans District, both testified that the pole in question was in good alignment with other poles in the vicinity; that the Southern Bell Telephone and Telegraph Company, under a joint use agreement with the New Orleans Public Service, Inc., first placed its attachments to the pole in 1940 and that later on attachments were made in May 1945. These witnesses said that had the pole been out of line with others along Lowerline Street, their company would have requested the New Orleans Public ■ Service, Inc., to properly line the pole up with others and that they knew, that no such request had ever been made because the poles were always in proper alignment and no such request was necessary. Cap-depon further testified that had the pole been moved as plaintiff’s witnesses say it was, maintenance work would have. been requiréd to strengthen the cables, and his examination of the telephone company’s records does not reveal that any work of that kind was ever done on the cables attached to the pole in question.
In the record is also the testimony of William 'Holliday and Frank Johnson, respectively Foreman of the Overhead Line Section and Engineer of Electrical Distribution Department of New Orleans Pub- *237 lie Service, Inc., which is to the effect that the alignment .of the pole with other poles was good or excellent; that the pole was approximately thirty years old;' that the cross arm attached to it appeared to have been installed in 1927. Holliday stated that during his supervision from 1940 to 1949 the pole had never been moved, and further that had the pole been moved, a new pole would have been substituted because of the age of the original pole. Johnson likewise stated that there had been no moving of the pole from the original location, and pointed out that there is no splicing of wires or any new sections of pavement which would have existed had the pole been moved. Johnson says that his examination of the pole in front of the premises 3427 Lowerline Street made shortly before the trial below revealed the sanie contours and bumps as the pole shown on the photographs which were made by the building and loan association in 1935.
The plaintiff produced as an expert witness an engineer, Mr. A. W. Thompson, who viewed the general locality shortly before testifying. Mr. Thompson, however, had no idea as to what may have been the cause of the break in the sidewalk near the pole, but he stated that it seemed to him as if a cylindrical'object similar to a pole had-been there. He admitted, however, that the break could have resulted from other causes.
New Orleans Public Service, Inc., produced Mr. Fernand C. Gandolfo,‘an experienced Surveyor, as an expert'witness, who testified that the line pole in' front of the premises 3427 Lowerline Street, was in good or excellent alignment with the other poles in the vicinity when considered with the meanderings of the street. , Mr. Gan--dolfo also mentioned that the semicircular •depression which plaintiff says caused' his fall was similar to another semicircular -crack or hole four feet farther away, and ■in fact the two cracks were “miraculously” alike.
We do not consider it necessary to determine whether the defect into which IBirth says he stepped constituted a trap or is to be characterized as such a defect as would warrant an action for negligence, nor do we deem it .necessary to determine whether the City had constructive notice of such defect as there may have been in the pavement on which plaintiff fell.
In view of the plea of contributory negligence made by the City of New Orleans and New Orleans'.Public Service, Inc., in the alternative, we find it both logical -and expedient to first analyze the actions- of plaintiff in connection with his alleged accident, for the reason that there cannot be a recovery if the plaintiff, by the exercise of due diligence and reasonable care could have avoided the accident which he says happened to him. Therefore, our first consideration of the evidence with regará to the claim against the City of New Orleans will be what were the actions of plaintiff prior to and at the time of his falling to the sidewalk early on that morning in July 1946.
Although Birth for many years resided about one-half of a block from the situs of the accident, his testimony is that he was unfamiliar with the sidewalk having traversed it but a few times, the only recent times being once on each of the three days immediately preceding the date of the accident. Not only does Birth’s testimony in that regard appear to be unreasonable and illogical, but the testimony is contradicted by several of. his witnesses, including his wife, who state that Birth traveled .the sidewalk as a pedestrian oh many occasions. Holt, a letter carrier and a close friend of the plaintiff, who came at his own expense from Pass Christian, Mississippi, to .-New ■ Orleans in order to: testify for plaintiff at the 'trial, states that he -saw Birth going back and forth on' Lowerline Street on may occasions. Carter, on-whose testimony plaintiff places great reliance, stated, that he lived in the premises -3427 Lowerline Street between 1944 and >1949 and saw Birth pass over the sidewalk in front of the. premises many times. Emery also had noticed Birth going to and fro over the sidewalk on many occasions.
There is no doubt in our minds that Birth well knew or should have known of the *238 defectiveness of the sidewalk in question. He, of all his witnesses, was the only one who had no knowledge of the bad condition of the sidewalk. While the accident happened early in the morning, it was then broad daylight and there is no reason why Birth should not have seen the hole or defect in the pavement into which he says he stepped, had he been the least bit observe ant. From the testimony the hole to which Birth attributes his fall was apparent and could easily have been noticed even by a casual glance at the pavement.
Under these circumstances, the plaintiff was under the duty of observing the defects, even assuming that he had no prior knowledge of them, and to have directed his course as a passer-by so as not to walk into a dangerous place in the pavement.
.It is well settled that a passer-by must see those defects which are obvious and can be noticed by a reasonably and ordinarily prudent person. Ansley v. City of New Orleans, La.App., 168 So. 343; Massicot v. City of New Orleans, La.App., 43 So.2d 621; White v. City of Alexandria, 216 La. 308, 43 So.2d 618.
Plaintiff’s counsel do not seriously dispute that such is the law, but they strenuously contend that there was standing water on the sidewalk on the morning of the accident and that a puddle of water prevented Birth from noticing the hole, and that under these circumstances it cannot be said that he was guilty of contributory negligence in not seeing what ordinarily would have been obvious.
There is uncontradicted evidence to the effect that due to a lack of proper drainage in the neighborhood, water does sometimes accumulate and stand all along Lowerline Street and particularly around and about the scene of the accident, and that the depth of the water at times is sufficient to cover the sidewalk to such an extent that pedestrians are forced to leave the sidewalk and step into the street and then proceed along the street itself, which is higher than the sidewalk and affords dry foot passage.
But we do not think the evidence bears out that there was standing water at the time Birth claims he fell or that the hole was concealed to such an extent that he could not see it. The plaintiff was the only one who testified that water stood on the sidewalk at the time.
An employee of the U. S. Weather Bureau, named Sanders, testified that on July 2, 1946, which was the day preceding the accident, there had been only .37 of an inch of rain at the Dublin Street Station which is the nearest station to the vicinity of the accident, and that on July 3, the date on which the accident is supposed to have happened, there was no rain at all in the vicinity.
A careful analysis of Birth’s testimony would not lead to the impression that Birth encountered standing water as he walked along the sidewalk. We quote all of his testimony in that regard:
“Q. What type of heels your shoes had? A. My shoes had leather soles and leather heels.
“Q. Now, what was the condition of the pavement ? A. Well, the pavement was wet.
“Q. Was it damp or was there, water standing on it? A. Water was flowing across the pavement. It wasn’t covered all the way over. They had water by the ditch.
“Q. They had water by the restaurant? A. Yes, sir. The water runs along the ditch.
“Q. Wouldn’t it have been easier if there was water there for you to walk in the street?
******
A. It would have been convenient for me to walk on the sidewalk.
“Q. Were you walking in water? That is what I want to know. A. The only water I was walking in would1 be the lower parts of the sidewalk where the water would be flowing across,
*239 "Q. Where was the low parts of the sidewalk? A. In front of 3427.
“Q. You could see that low part there in front of 3427? A. Yes, sir; I saw it.
“Q. Wasn’t the water, as a matter of fact, higher towards the gutter than it was towards the house, or deeper?
A. If I understand you right it was deeper towards the gutter but they had a little hill in there and the water was flowing across the low section.”
During argument of the case before us, counsel for plaintiff contended that this testimony showed that water covered the outer edge of the sidewalk and that the hole was entirely submerged. Counsel seem to concede that the other or inner and greatest portion of the sidewalk nearest to the house although wet was entirely free of standing water. This being so, it appears then that Birth chose to walk along the outer edge of the sidewalk through the water rather than along the inner or dry portion of the sidewalk on which no water stood. It is not disputed that the inner rim of the semicircular hole, that is to say, the rim of the hole nearest to the house, is located 30 inches from the bottom step leading to the premises. The overall width of the sidewalk is 36 inches. According to plaintiff himself, there was this 30-inch pathway on the sidewalk over which he could have passed, and had he taken this passage no accident could have befallen him. In other words, he elected to proceed on a dangerous route when there was a clear and obvious safe passage yet remaining for him on the sidewalk. If he fell, it was entirely because of his own imprudence.
The jurisprudence of this state is well settled that when there are two pathways, one with and one without danger, open to a plaintiff and he chooses the former, he cannot recover for his damages if he is injured. Barnes v. City of New Orleans, 4 La.App. 503; Moise v. New Orleans Public Service, Inc., 19 La.App. 703, 140 So. 505; Kuntz v. City of New Orleans, La.App., 10 So.2d 658; Bodenheimer v. City of New Orleans, La.App., 18 So.2d 224; Hudgens v. City of New Orleans, La.App., 54 So.2d 536.
Therefore, the evidence being convincing that plaintiff’s own negligence contributed to his mishap, no recovery may be had by him under the provisions of our laws.
Therefore, for the above reasons, the judgment appealed from is affirmed.
Affirmed.