SAMUEL, Judge.
Plaintiff filed this suit in tort seeking damages for personal injuries sustained while he was working on a drilling rig as an employee of Gurtler, Hebert, Inc. Shell Oil Company, for whom the drilling was being done, had employed Gurtler to drive conductor pipe. Named defendants are Circle Drilling Company, Inc., owner and operator of the rig, and its tool pusher at the time of the accident, Alton Wheat. The petition alleges the injuries resulted from the negligence of Wheat. The two defendants answered, denying negligence on their part and alternatively pleading contributory negligence on the part of plaintiff. Wheat also pleaded assumption of the risk and, by amended answer, Circle alternatively further averred plaintiff was its borrowed servant, pro hac vice, and therefore workmen’s compensation was his exclusive remedy against Circle. Gurtler intervened to recover compensation benefits it had paid in the event judgment was rendered in plaintiff’s favor.
Prior to trial, but more than a year after the occurrence of the accident, Circle and Wheat filed third-party demands against Gurtler, certain named employees, managers, superintendents and/or department heads of Gurtler, and their insurer, alleging negligence on the part of the third-party defendants and seeking judgment against them for full indemnity or, alternatively, legal contribution as to any judgment which might be rendered on the main demand against the third-party plaintiffs. To these third-party demands Gurtler filed exceptions of no right or cause of action (based on the contention that as plaintiff’s employer it was exempt from tort liability) and the remaining third-party defendants filed exceptions of prescription.
*528 After an extended trial the district judge concluded that: The borrowed servant doctrine was inapplicable and therefore Circle could be held liable in tort; Gurtler was protected by the workmen’s compensation law and for that reason could not be held liable in tort; the exceptions of prescription filed by the third-party defendants were well founded; Wheat and Circle had been guilty of negligence; and there had been contributory negligence on the part of plaintiff which barred a recovery by him. Accordingly, the trial court judgment dismissed plaintiff’s demand, the intervention of Gurtler and the third-party demands of Circle and Wheat.
Plaintiff has appealed therefrom, contending the trial court was in error in finding contributory negligence on his part. Circle and Wheat have answered that appeal, contending there was no negligence on the part of Wheat; in addition, those two defendants have taken a protective appeal from the judgment dismissing their third-party demands (See Vogt v. Wheat, La.App., 222 So.2d 579, in which we denied a motion to dismiss that appeal).
As found by the trial court and by us, the record reveals the following facts:
Circle’s rig, located in a swampy area near Good Hope, Louisiana, had been in the process of “rigging up” for about three days. The rig floor was approximately 30 to 35 feet square and 20 feet above the ground. At the front-center edge of the rig floor a “pipe slide” or “V-door ramp” extended at an angle toward the ground to a catwalk. The “V-door ramp” is used in pulling pipe from the catwalk into the derrick and thus in position to be driven into the hole. The catwalk was approximately 55 to 58 feet long, 5 feet wide and 4 feet high. A rack containing conductor pipe was parallel to the catwalk. The rack and the catwalk were in front of the rig. There was a rotary table in the center of the rig floor directly beneath the crown block atop the derrick. This rotary table was 8 to 10 feet from the V-door, i. e., the upper end of the pipe slide.
On the day of the accident a Gurtler hammer crew went to the rig site for the purpose of driving conductor pipe. It consisted of Lazio Gyomlai, hammer engineer in charge of the crew; plaintiff, hammer mechanic; and Tony Chandler, a welder. Following some argument between Gyomlai and Wheat as to the manner in which the same was to be accomplished, the heavy hammer was raised from the flatbed trailer truck which had brought it to the drilling site and place upright on the rotary table.
While the hammer was in that position Gyomlai and plaintiff removed the slings and attached smaller slings and a spreader bar. After this was done the hammer required servicing, which included fueling, greasing and attaching a bent welding rod to the hammer’s fuel pump to which a one-quarter inch and approximately 70' to 100' long “tag line” was to be attached. The purpose of the “tag line” is to control the operation of the hammer while pipe is being driven; it can be attached at any time before the hammer begins operating.
Under the supervision of Gyomlai plaintiff began servicing the hammer on the rig floor. He fueled and greased the hammer and placed a bent welding rod into a hole in the fuel pump lever located inside the leads or sheathing surrounding the hammer. While he was so engaged Chandler welded a drive shoe on the far end of the first joint of pipe to be driven. At that time the joint was on the pipe rack. The drive shoe is placed on the bottom of the first joint in order to prevent the pipe from folding or splitting while it is being hammered into the ground.
Plaintiff’s next duty was to attach one end of the tag line to the bent welding rod. In order to accomplish this it was necessary to reach above his head and place his hands and a portion of his arms inside the hammer’s metal sheathing. On this occasion Gyomlai thought the tag line had been secured before that act had been accom *529 plished. He pulled the line from plaintiff, brought one end of it to the right front corner of the rig floor and dropped that end to the ground so that it could be used to raise Chandler’s welding leads to the floor. Gyomlai then walked to the back of the rig and down the stairs located there. When the tag line was pulled from him plaintiff left the hammer and went to the right front corner of the floor where he was joined by Chandler after the latter had tied the line to his welding leads. Together the two lifted the leads to the rig floor. Chandler then left the rig floor to get a drink of water while plaintiff was coiling the tag line.
In the meantime the Circle crew had commenced raising the first joint of conductor pipe to be driven. That joint, the one to which Chandler had welded the drive shoe, was longer than any such pipe previously handled by the Circle crew. It was being raised by the use of a cat line and an air hoist line. Both lines passed through sheaves in the top of the derrick, 133 feet above the level of the rig floor, and the end of each was secured to the joint of pipe being raised. Circle’s tool pusher, Wheat, was operating the cat line control located on the right rear of the rig floor. Sanders, another Circle employee, was operating the air hoist control located on the left front side of the rig floor. White, Circle’s driller, also was on the rig floor directing the pipe raising operation.
As the first joint of conductor pipe was being raised the drive shoe on its far end was caught on the edge of the catwalk and the pipe “hung up” with its hauling end approximately 4 feet above and 12' to 15' forward of the rig floor. It remained in that position for some 3 to 5 minutes while Circle roughnecks at the catwalk were attempting to disengage the pipe from the walk. The joint was thus suspended during the time plaintiff and Chandler were raising the welding leads. After the leads had been raised plaintiff completed coiling the tag line, walked from the right front corner of the rig toward the hammer, and began to attach the tag line to the bent welding rod in the upper part of the hammer. While so engaged, and while plaintiff’s back was turned to the pipe being raised, the roughnecks managed to disengage the drive shoe from the catwalk and the pipe swung towards the rig and the V-door ramp. It struck the hammer and plaintiff, severely injuring his left arm and hand.
White testified that, as plaintiff was walking to the hammer while the pipe being raised was snagged and hanging 12' to 15' out from the rig floor, he told plaintiff not to walk across because he would be killed if the pipe hit him. Sanders testified he heard the warning. Plaintiff denied he had heard the warning. The trial judge felt that whether or not White had warned plaintiff was not material to his conclusions regarding negligence on the part of plaintiff or Circle’s employees.
The record establishes that it is extremely dangerous to be in the path of the V-door ramp during a pipe lifting operation. Plaintiff admitted he was aware of that danger but testified he was unaware of the fact that a pipe lifting operation was in progress.
We find it expedient and proper to consider first the question of whether or not plaintiff was guilty of negligence which was a proximate cause of the accident. If, as found by the trial court, plaintiff was guilty of such negligence, he cannot recover and a determination of any of the other questions presented, including whether or not the original defendants were negligent, becomes unnecessary; the plaintiff in intervention and the third-party plaintiffs can recover, respectively, compensation benefits paid and indemnity or contribution only in the event of a judgment in favor of plaintiff on the main demand.
Generally, the established rule is that one must see dangers which are obvious and which can be appreciated by a reasonable and ordinarily prudent person; *530 there can be no recovery for injury caused by a danger which is open and apparent. Coquille v. Expressway Bowling, Inc., La.App., 183 So.2d 347; Turner v. Aetna Casualty & Surety Company, La.App., 175 So.2d 304; Spinks v. General Fire & Casualty Company, La.App., 175 So.2d 339; Tete v. Newark Insurance Company, La.App., 170 So.2d 248; Denton v. Fireman’s Fund Insurance Company, La.App., 158 So.2d 438; Youngblood v. Newspaper Production Company, La.App., 158 So.2d 432; Birth v. City of New Orleans, La.App., 77 So.2d 233; Hamilton v. City of Monroe, La.App., 72 So.2d 576.
His counsel argue that plaintiff’s failure to observe the pipe-lifting operation does not call for an application of the rule for the reasons that he was inexperienced, had no reason to believe the operation would commence at the time that it did, and was distracted as a result of being intent on accomplishing his duties. We cannot agree.
The record does establish that plaintiff was without prior experience on a land-based drilling operation. He had been employed by Gurtler only a short time before the accident and his experience as a hammer mechanic was limited to three offshore jobs where pipe customarily was lifted by a crane. He testified there was a crane in the vicinity of the Circle rig and he did not know the pipe lifting operation had commenced because he was under the impression that lifting would be done by a crane following the marking of the first joint of pipe to be driven, a duty he was required to perform.
Whether or not the first joint of pipe had to be marked prior to the commencement of drilling operations is questionable; plaintiff’s immediate superior, Gyomlai, testified to the contrary. And while there was a crane in the vicinity, it was some distance from the rig itself and no efforts were ever made to move the crane into position for a pipe lifting operation. Insofar as “momentary forgetfulness” resulting from being intent on doing his work is concerned, in order to excuse such conduct which otherwise would constitute negligence, inattention to a known or easily discernable danger must be induced by some sudden and adequate disturbing cause. Veal v. Employers Liability Assurance Corporation, La.App., 108 So.2d 242; Crosby v. Brown Oil Tools, Inc., La.App., 92 So.2d 115. Here there was no such cause.
We agree with the trial court finding that plaintiff was so inattentive to his surroundings he failed to observe a danger which was obvious, imminent and visible. Although he knew it was extremely dangerous to be in the vicinity of the V-door ramp during a pipe lifting operation, he walked from a place of safety directly into the path of the V-door ramp. Each of the witnesses who testified factually concerning the accident stated he knew the pipe lifting operation was going on and, from whatever position he may have occupied, that he saw the joint of pipe suspended in the air over the front of the rig floor. While Chandler and the plaintiff were lifting the welding leads to the rig floor the former saw the pipe suspended in the air with its far end caught on the edge of the catwalk. As the two were on the right front edge of the rig floor and the catwalk and the suspended pipe were below and almost directly in front of them, it is difficult to understand how plaintiff, could have failed to see what Chandler saw. In addition, from any position on the rig floor, the pipe hanging out above the V-door and pointing toward the rotary table, the taut air hoist and cat lines attached to the raised end of the pipe, and the activity on the rig floor, including the operation of the cat line and air hoist controls, made it obvious that a pipe lifting operation was in progress. In failing to observe that operation, in walking from a place of safety into a place of obvious danger, and in remaining in that place of danger with his back turned to the pipe being lifted, plaintiff *531 was guilty of negligence which bars a recovery by him.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.